**Bonnie J. WESTFALL, Plaintiff,**

v.

**GTE NORTH INCORPORATED, individually and d/b/a GTE Telephone Operations and GTE Corporation, Defendants.**

No. 3:95–CV–0488–T.

United States District Court,
N.D. Texas,
Dallas Division.

Aug. 1, 1996.

Jim E. Cowles, Kimberly A. Lucas, Susan Jones Gilbert, Cowles & Thompson, Dallas, TX, for Bonnie J. Westfall.

Lawrence J. McNamara, Jennifer Gray Jackson, Charles Wesley Rhodes, IV, Liddell Sapp Zivley Hill & LaBoon, Dallas, TX, Glenda Rainwater Beard, GTE Telephone Operations, Irving, TX, for GTE North Inc., GTE Corp.

*ORDER GRANTING IN PART AND DE-NYING IN PART DEFENDANTS' MO-TION FOR SUMMARY JUDGMENT*

MALONEY, District Judge.

Before the Court is Defendants' Motion for Summary Judgment. The motion is opposed. After considering the motion, the response, the reply, the supplemental responses, and supplemental replies, the Court is of the opinion that the motion should be granted in part and denied in part.

Plaintiff Bonnie J. Westfall was employed by Defendants GTE North Incorporated and GTE Corporation as a manager of sales operations in GTE carrier markets in 1990. In April, 1994, GTE conducted an investigation into the prepayment of certain vendors for contract work. After the investigation, Westfall was discharged. She contends that she was discharged out of discrimination while GTE contends that she was discharged for violating internal policies of GTE.

Westfall brings claims for: (1) sex discrimination under Title VII and the Texas Commission on Human Rights Act (TCHRA), (2) age discrimination under the Age Discrimination in Employment Act and the TCHRA, (3) disability discrimination under the Americans With Disabilities Act and the TCHRA, (4) defamation, (5) breach of contract, (6) promissory estoppel, (7) wrongful discharge, and (8) intentional infliction of emotional distress. GTE moves for summary judgment on all of her claims.

Summary judgment should be entered only where the record establishes that there is no genuine issue as to any material fact and that the-moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The movant bears the burden of establishing the propriety of summary judgment. *Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1194 (5th Cir. 1986).

Once a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The substantive law will identify what facts are material. *Id.* at 248, 106 S.Ct. at 2510. A dispute as to a material fact is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. at 2510.

### Claims for Sex Discrimination

To establish a prima facie case, Westfall must show on her claims for sex discrimination under Title VII and the TCHRA: (1) that she is a member of a protected class, (2) that she was qualified to do her job, (3) that her employment was adversely affected, and (4) that she was replaced with someone from outside the protected class or was treated less favorably than employees outside the protected class. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *Farrington v. Sysco Food Svcs., Inc.,* 865 S.W.2d 247, 251 (Tex.App.—Houston [1st Dist.] 1993, writ denied). GTE as well as the Court assumes that Westfall can make a prima facie case of sex discrimination.

GTE then bears the burden to articulate a legitimate, nondiscriminatory reason for Westfall's discharge. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506–08, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993). Once GTE has supported the proffered reasons with sufficient evidence, the burden reverts to Westfall to prove that the proffered reasons are pretexts for discrimination. *Rhodes v. Guiberson Oil Tools,* 75 F.3d 989, 993 (5th Cir.1996) (en banc). Westfall must produce evidence, including circumstantial evidence, from which a reasonable jury could find that GTE discriminated against her because of her gender. *Id.* (comparing summary judgment standard to standard on directed verdict).

In this case, GTE presents evidence that it discharged Westfall after an internal investigation which concluded that Westfall had been engaged with other GTE managers and employees in a practice of paying vendors for undefined work to be performed in the future without a definitive contract. This practice violated GTE's internal policies. GTE also presents evidence that it considered Westfall to have violated policies with regard to the approval and payment of her own expenses. These reasons for Westfall's discharge are

legitimate and nondiscriminatory. Thus, the presumption raised by Westfall's prima facie case of sex discrimination disappears. *Rhodes,* 75 F.3d at 993.

██ Westfall in turn presents evidence regarding the internal investigation, the purported misconduct for which she was discharged, and the conduct of other GTE managers and employees. For example, she presents evidence that her conduct regarding her expense reports was taken at the direction of her supervisors. Most importantly, Westfall produces evidence that male managers and employees committed equally or more egregious violations of GTE policies but were not as severely disciplined. For example, she presents evidence that her male counterparts authorized over $1 million in prepayments to vendors.

GTE contends that Westfall cannot simply argue about whether she actually committed the misconduct for which she was supposedly discharged. GTE argues that it is sufficient that it had a good faith belief that she had committed the misconduct and that it discharged her for that misconduct. GTE also presents evidence that it disciplined male employees involved in the prepayment of vendors. It also contends that Westfall's male counterparts were not discharged because GTE determined that none of the managers personally benefitted from the prepayments.

The evidence on the circumstances surrounding Westfall's discharge are in genuine dispute. While GTE articulates legitimate, nondiscriminatory reasons for Westfall's discharge, Westfall presents evidence from which a reasonable jury could find that the proffered reasons are pretextual. Also, she presents evidence that she was disciplined more harshly than her male counterparts. For example, GTE contends that her male counterparts were not discharged because of the prepayments to vendors because they did not personally benefit from them. However, Westfall points out that GTE determined that no employee, including Westfall, person-

ally benefitted from the misconduct. GTE's summary judgment motion on Westfall's claims for sex discrimination under Title VII and the TCHRA is denied.

### Claims for Age Discrimination

██ The parties' burdens on Westfall's claims for age discrimination under the ADEA and the TCHRA are the same as the burdens on her claims for sex discrimination. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824; *Hazen Paper Co. v. Biggins,* 507 U.S. 604, 609–613, 113 S.Ct. 1701, 1706–07, 123 L.Ed.2d 338 (1993); *Schroeder v. Texas Iron Works, Inc.,* 813 S.W.2d 483, 484–85 (Tex.1991). The Court assumes that Westfall can make a prima facie case of age discrimination.

Again, GTE relies on its evidence that it discharged Westfall for her part in the prepayment of vendors and her treatment of her expense accounts. As discussed, these reasons are legitimate and nondiscriminatory. GTE contends that Westfall cannot present evidence that its proffered reasons are pretexts for age discrimination.

In response, Westfall reurges her evidence indicating that GTE's proffered reasons for her discharge are pretextual. She also states in her affidavit that she was replaced by Jim Wickman, a male under 40 years of age. She states in her response that only one other person disciplined by GTE was over 40.[1] While she refers to her affidavit as evidentiary support for that statement, she repeats no such statement in her affidavit.[2] Lastly, she argues that GTE had an additional incentive to discharge her because she was a mere five years from eligibility for early retirement.

Westfall produces no evidence from which a reasonable juror could find that GTE discriminated against her on account of her age. While she does make out a prima facie case of age discrimination, GTE successfully rebuts the inference of discrimination raised by the prima facie case by articulating nondis-

---

1. Plaintiff Bonnie J. Westfall's Response to Defendants' Motion for Summary Judgment and Brief in Support, at 17 (Jan. 8, 1996).

2. Affidavit of Bonnie J. Westfall, Exhibit 2 to Plaintiff Bonnie J. Westfall's Response to Defendants' Motion for Summary Judgment and Brief in Support (Jan. 8, 1996).

criminatory reasons for her discharge. Again, her affidavit does not support the statement that only one other employee over the age of 40 was disciplined. *Schoch v. First Fidelity Bancorporation,* 912 F.2d 654, 657 (3d Cir.1990) (statements in summary judgment response cannot serve as evidence). Also, she offers no evidence regarding such an employee or other evidence permitting a fact finder to compare her situation and conduct with that employee or employees outside of the protected class. Lastly, both the U.S. Supreme Court and the Fifth Circuit have expressly rejected the proposition that an employer violates the ADEA by discharging an employee in an effort to avoid paying her retirement benefits unless there is evidence that the decision was motivated by age. *Hazen,* 507 U.S. at 606–15, 113 S.Ct. at 1706–08; *Armendariz v. Pinkerton Tobacco Co.,* 58 F.3d 144, 152–53 (5th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 709, 133 L.Ed.2d 664 (1996). In contrast with her claim for sex discrimination, Westfall provides virtually no evidence regarding differential treatment in discipline between herself and persons under 40. As Westfall presents no evidence that she was discriminated against on the basis of her age, GTE's motion on these claims is granted.

### Claims for Disability Discrimination

■ In her first amended complaint, Westfall brings claims for disability discrimination under both the ADA and the TCHRA. GTE contends that she cannot maintain a claim under either act because she cannot establish that she was disabled within the meaning of the statutes. 42 U.S.C. § 12112(a); *Austin State Hosp. v. Kitchen,* 903 S.W.2d 83, 87 (Tex.App.—Austin 1995, no writ).

Westfall produces no evidence that she was disabled within the meaning of either the ADA or the TCHRA. *Nissho–Iwai American Corp. v. Kline,* 845 F.2d 1300, 1307 (5th Cir.1988) (stating court has no duty to search the record for a triable issue of fact); *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 915–16 (5th Cir.1992), cert. denied, 506 U.S. 832, 113

S.Ct. 98, 121 L.Ed.2d 59 (1992). She also states that she intends to seek leave to withdraw her claim under the ADA.[3] Thus, GTE's motion on these claims is granted.

### Claim for Defamation

■ Westfall alleges that GTE officials slandered her during the course of its investigation and that her co-workers slandered her with various statements. Slander is a defamatory statement that is orally published to a third person without legal excuse. *Randall's Food Markets, Inc. v. Johnson,* 891 S.W.2d 640, 646 (Tex.1995).

■ Westfall contends that the following evidence of assertedly slanderous statements require denial of GTE's summary judgment motion on her defamation claim: (1) Linda Jackson, a product manager for GTE, was told by an unidentified employee that Westfall was discharged for "misuse of funds with a customer;" (2) Jackson also heard from Mary Brence, a staff administrator, that Westfall was discharged for misuse of funds; (3) Jackson in turn told Rob Hicks, a subordinate of Westfall, that she was discharged for misuse of funds with a customer; (4) Candace Locke, a GTE employee, heard from Susan Lowell, a co-worker, that Lowell had heard from an unidentified source that "there was money missing" in connection with Westfall's discharge; (5) Locke also heard from Mark Griffith, a director in Westfall's department, that "an issue with prepayments ... went to corporate ... but it was advised that no disciplinary action was required, but, in fact, corporate wanted to know more about it, and it resulted in the investigation and [Westfall] being terminated"; (6) Locke further heard from Griffith that he had heard that corporate, specifically Mike Kelly, wanted someone "to take ownership of" or "take the fall for" the prepayments issue; (7) Don McLeod, another GTE employee, told Locke that Bob Buttery, a co-worker, approached him in a restaurant and told him that he had "heard it [Westfall's discharge] had something to do with expense reports"; (8) Julie Addicott, a GTE employ-

---

**3.** Plaintiff Bonnie J. Westfall's Response to Defendants' Motion for Summary Judgment and

Brief in Support, at 2 n. 2 (Jan. 8, 1996).

ee, told Locke that she had heard from Johnny Rousseau that there was a discussion about Westfall's discharge in a bowling alley during which Westfall was referred to as "the travel bunny"; (9) Kathy Scovic, a GTE employee, was told by Jerry Dinsmore, her supervisor, that Westfall had been discharged for "improprieties";[4] (10) Sarah Messecar, a GTE staff employee, discussed Westfall with Ray Straight, a project manager for re-engineering, and Straight told her that "he had heard that Bonnie [Westfall] was expensing clothes.. as company expenses"; (11) Susan Lowell Collin, a contract administrator assigned to GTE's Indiana office, heard "general talk" in her office that "something had happened to Bonnie [Westfall]"; and (12) Collin asked Locke whether criminal charges were involved in Westfall's discharge because Collin had "heard that there was mismanagement of funds."[5]

GTE objects to the evidence underlying many of these statements on the grounds that it is hearsay. GTE relies on *Wells v. Shop Rite Foods, Inc.*, 474 F.2d 838, 839 (5th Cir.1973). In *Wells*, the Fifth Circuit held that a district court properly excluded, on hearsay grounds, testimony from a witness that several of the defendant's employees had heard that the plaintiff had been discharged for stealing. *Id.; Patton v. United Parcel Svc., Inc.*, 910 F.Supp. 1250, 1274 (S.D.Tex.1995) (ruling inadmissible testimony of plaintiff disciplined-for missing mail that co-workers to him that they had heard that a missing baseball was found in his desk).

The deposition testimony on which Westfall relies regarding the allegedly slanderous statements indicates that most of it is subject to GTE's hearsay objection under Wells. Specifically, the first statement that Jackson was told by an unidentified employee that Westfall was discharged for misuse of funds with a customer; the fourth statement that Lowell told Locke that she had heard from an unidentified source that money was missing in connection with Westfall's discharge; the fifth statement that Griffith told Locke

that he had heard from an unidentified source that an issue with respect to prepayments went to corporate, that corporate requested an investigation, and that no discipline was recommended; the sixth statement that Griffith also told Locke that he heard, again from an unidentified source, that corporate wanted someone to "take the fall" for the prepayments issue; and the tenth statement that Straight heard from another unidentified source that Westfall had expensed clothes as company expenses fall within the hearsay objection. Thus, these statements cannot serve as a basis for a defamation claim.

■ GTE also contends that some of the statements are true or simply are not defamatory and, thus, cannot serve as a basis for a defamation claim. *Johnson*, 891 S.W.2d at 646 (truth is an affirmative defense to slander). The seventh statement from Buttery to MacLeod that Westfall's discharge had something to do with expense reports is true for the purpose of a defamation claim. GTE's evidence regarding its proffered nondiscriminatory reasons for her discharge indicates that the official reason for her discharge was because of misconduct involving expense reports. Even though the Court ruled that Westfall has presented evidence raising a genuine issue of material fact as to whether GTE's proffered reasons are pretexts for sex discrimination, nothing links this evidence of pretext to Buttery or indicates that Buttery was repeating anything other than GTE's official reason for her discharge. *See Schauer v. Memorial Care Systems*, 856 S.W.2d 437, 449 (Tex. App.—Houston [1st Dist.] 1993, no writ) (qualified privilege exists as long as speaker believes in truth of statement).

Likewise, the ninth statement that Scovic was told by her supervisor that Westfall was discharged for "improprieties" is also true for the purpose of a defamation claim. *Schauer*, 856 S.W.2d at 449; *Einhorn v. La-Chance*, 823 S.W.2d 405, 411 (Tex.App.—Houston [1st Dist.] 1992, writ dism'd w.o.j.)

---

4. The first nine items are taken from Plaintiff's Surreply Brief in Opposition to Defendants' Motion for Summary Judgment, at 4–5 (Mar. 12, 1996).

5. The tenth, eleventh, and twelfth statements are taken from Plaintiff's Second Supplemental Response and Brief to Defendants' Motion for Summary Judgment, at 8–9 (May 1, 1996).

(holding statement that an employee was fired for reasons relating "solely to work performance" was not defamatory because it was "nonspecific").

The eighth statement that there was a discussion about Westfall's discharge in a bowling alley which involved the use of the term "travel bunny" does not support a claim of slander. Locke testifies in her deposition only that the conversation occurred.[6] However, she provides no details of the conversation indicating that anything said was defamatory. It is undisputed that Westfall was discharged. Moreover, a conversation in a bowling alley is the kind of conversation for which a corporate employer such as GTE cannot be held liable. *Marshall Field Stores, Inc. v. Gardiner*, 859 S.W.2d 391, 400 (Tex.App.—Houston [1st Dist.] 1993, writ dism'd w.o.j.) (corporation not liable in defamation for widespread rumors and gossip among store employees); *Patton*, 910 F.Supp. at 1274 (employer not liable for unauthorized gossip spread by unidentified employees); *see also Texam Oil Corp. v. Poynor*, 436 S.W.2d 129, 130 (Tex. 1968) (corporation liable in defamation for statements of its agents only if the defamation is referable to the duty owing by the agent to the corporation and was made while in the discharge of that duty).

Likewise, the eleventh statement that Collin heard general talk in the Indiana office that "something had happened to Bonnie [Westfall]" is true. GTE had discharged Westfall. Moreover, Collin does not remember any details about the general talk and provides no evidence that anything said was defamatory.[7]

Similarly, the twelfth statement that Collin asked Locke whether criminal charges were involved in Westfall's discharge because Collin had heard that there was mismanagement of funds cannot serve as the basis for a defamation claim. The first part of the statement is merely a question as to whether criminal charges were involved in Westfall's discharge. This question is not defamatory.

It does not attribute any misconduct to Westfall. *See A.H. Belo Corp. v. Rayzor*, 644 S.W.2d 71, 79 (Tex.App.—Fort Worth 1982, writ ref'd n.r.e.) (holding that the publication of a false defamatory statement of fact rather than opinion is essential). The second part of the statement that Collin had heard that mismanagement of funds was involved in Westfall's discharge falls into the hearsay exception under Wells. Also, the entire statement from Collin to Locke falls within the category of rumors for which a corporate employer is not liable. *Gardiner*, 859 S.W.2d at 400.

In short, the seventh, eighth, ninth, eleventh, and twelfth statements cannot serve as a basis for a defamation claim because the statements are either true or are not defamatory.

■ Next, GTE contends that some of the statements cannot serve as the basis for imposing liability on GTE. Again, a claim for defamation is sustainable against a corporate employer for defamation by its employee only if such defamation is referable to the duty owing by the employee to the corporation, and was made while in the discharge of that duty. *Poynor*, 436 S.W.2d at 130; *Wagner v. Caprock Beef Packers Co.*, 540 S.W.2d 303, 304–05 (Tex.1976). The second statement that Brence, a staff administrator, told Jackson that Westfall was discharged for misuse of funds and the third statement that Jackson, a product manager, told Hicks, a subordinate of Westfall, that she was discharged for misuse of funds do not meet the standard of *Poynor* and *Wagner*. Nothing on the record shows the scope of duties of either Brence or Jackson or that either employee was responsible for discharging employees. *Wagner*, 540 S.W.2d at 304–05 (affirming reversal of judgment in favor of employee where record was silent as to the responsibilities of a plant manager who telephoned other plants where plaintiff sought work and reported that plaintiff was an alcoholic); *Cotton Belt*

---

6. Oral Deposition of Candace Locke, at 17–18, Exhibit B to Plaintiff's Surreply Brief in Opposition to Defendants' Motion for Summary Judgment (Mar. 12, 1996).

7. Oral Deposition of Susan Lowell Collin, at 9–12 Exhibit D to Plaintiff's Second Supplemental Response and Brief to Defendants' Motion for Summary Judgment (May 1, 1996).

*R.R. v. Hendricks,* 768 S.W.2d 865, 870 (Tex.App.—Texarkana 1989, no writ) (actions of an agent are not presumed to be within the scope of agent's authority). These statements cannot serve as the basis for imposing liability for defamation on GTE.

■ Additionally, in connection with her defamation claim, Westfall presents evidence concerning some statements made by Jeff Schmitt, her manager and GTE's assistant vice president of national accounts.[8] Schmitt called a meeting of his and Westfall's direct subordinates, including Westfall's secretary, Tammy Haapasaari. In her deposition, Haapasaari testifies that the meeting lasted one to two minutes and that Schmitt said "there had been an investigation into a misappropriation of funds and some other stuff, and then he said that Bonnie [Westfall] had chosen to leave the company."[9] Westfall contends that the statement regarding an investigation into a misappropriation of funds is false because the investigation actually involved the prepayment of certain accounts and that GTE's internal investigation concluded that all funds were accounted for. She contends that Schmitt was acting in the course and scope of his employment as Westfall's supervisor and an assistant vice president by calling the meeting of his and Westfall's subordinates.

■ GTE contends that it enjoys a qualified privilege for the statements made by Schmitt. An employer enjoys a qualified privilege that attaches to communications made in good faith regarding an issue of some concern or mutual interest to the speaker and the listener. *Schauer,* 856 S.W.2d at 449. Whether a communication is protected by a privilege is a question of law. *Id.* The privilege is not lost so long as the speaker believes in the truth of the state-

ment. *Id.* The privilege is lost if the statement was made with malice. *Id.* A statement is made with actual malice when it is made with knowledge of its falsity or reckless disregard as to its truth. *Johnson,* 891 S.W.2d at 646. Once the defense of privilege has been raised, the plaintiff must produce clear and convincing evidence of actual malice to survive summary judgment. *Conti-Commodity Svcs., Inc. v. Ragan,* 63 F.3d 438, 442–43 (5th Cir.1995), cert. denied, —— U.S. ——, 116 S.Ct. 1318, 134 L.Ed.2d 471 (1996).[10]

GTE presents evidence as to the contents of Schmitt's statements which differs somewhat from the deposition testimony of Haapasaari. Again, Haapasaari testifies that Schmitt said that there simply had been an investigation into a misappropriation of funds. In her deposition, Westfall testifies that Haapasaari told her that Schmitt stated "that there had been an investigation into misappropriation of funds relative to training and expenses."[11] Relying on Westfall's version which relates the purported misappropriation of funds to training and expenses, GTE contends that Schmitt's statement is substantially true. *Johnson,* 891 S.W.2d at 646 (statements which are substantially true fall within defense of truth). Again, it is undisputed that Schmitt's statement that Westfall left the company is true; Westfall was discharged. GTE also contends that the statement is not defamatory in that it does not directly accuse Westfall of any wrongdoing.

Moreover, GTE contends that Westfall cannot produce clear and convincing evidence that Schmitt made the statements out of actual malice. Westfall testifies in her deposition that Schmitt telephoned her the next day and expressed his concern at her dis-

---

**8.** Plaintiff Bonnie J. Westfall's Response to Defendants' Motion for Summary Judgment and Brief in Support, at 18–21 (Jan. 8, 1996).

**9.** Oral Deposition of Tammy Haapasaari, at 11–13, Exhibit 6 to Plaintiff Bonnie J. Westfall's Response to Defendants' Motion for Summary Judgment and Brief in Support (Jan. 8, 1996).

**10.** On this point, federal summary judgment law differs from Texas summary judgment law. Under Texas law, an employer must conclusively

establish that the statement was made with an absence of malice to prevail on summary judgment. *Johnson,* 891 S.W.2d at 646. Because federal procedural law applies, the Court will apply the burdens as discussed in *ContiCommodity. Duffy v. Leading Edge Products, Inc.,* 44 F.3d 308, 312 (5th Cir.1995).

**11.** Oral Deposition of Bonnie J. Westfall, at 214, Exhibit A to Defendants' Motion for Summary Judgment (Dec. 4, 1995).

charge and asked if there was anything he could do for her.[12] Also, GTE points out that Westfall herself discussed the fact that she was involved in an investigation with Schmitt in a restaurant.[13] GTE contends that this evidence indicates that Schmitt was not acting out of malice in making the statements to their subordinates during the brief meeting.

Westfall contends that a genuine issue exists as to whether Schmitt spoke out of actual malice.[14] She contends that Schmitt as a "high-ranking officer of the corporation" knew or should have known of the content of the report concerning the investigation into the prepayment issues. She contends that the investigation was not into misappropriation of funds but into prepayments to vendors. She also points out that the report indicated that no funds were misappropriated.[15] She contends that a jury could find that Schmitt spoke out of actual malice from this evidence.

Also, Westfall attempts to raise an issue of fact regarding malice on the part of GTE by presenting evidence which she contends shows that Glenda Beard, an attorney assigned to GTE's telephone operations headquarters who was involved in the investigation leading to Westfall's discharge, made false statements about Westfall in an effort to justify Beard's recommendation to discharge her.[16]

Westfall fails to present clear and convincing evidence from which a jury could find that Schmitt acted out of malice in calling the meeting with his and Westfall's subordinates and telling them that there had been an investigation into misappropriation of funds and that Westfall had left the company. *Duffy*, 44 F.3d at 313 (discussing clear and convincing standard and actual malice); *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 252–53, 106 S.Ct. 2505, 2512–13, 91 L.Ed.2d 202 (1986) (stating trial court must consider the substantive evidentiary standard of proof, such as in a defamation case where the First Amendment mandates use of a clear and convincing standard, in assessing the evidence on a motion for summary judgment). As an initial matter, the statement is substantially true. A characterization of the investigation into alleged prepayment of monies to vendors for unperformed work as an investigation into a misappropriation of funds is not a substantial falsehood. Also, the statement does not directly attribute wrongdoing to Westfall and does not state that she was discharged (which is true in any event). More importantly, however, Schmitt had an interest in informing his and Westfall's subordinates that she was no longer with the company. Again, Westfall's argument that the statement that there was an investigation into misappropriation of funds is a statement made with knowledge of its falsity or reckless disregard for the truth is unavailing. Schmitt's characterization of the investigation is not a substantial falsehood. Westfall presents no evidence that Schmitt "in fact entertained serious doubts as to the truth" of his statement. *ContiCommodity*, 63 F.3d at 442–43 (emphasis added) (defining actual malice); *Duffy*, 44 F.3d at 312–13. Lastly, Westfall's evidence regarding Beard does not relate to Schmitt. Thus, Schmitt's statements will not serve as the basis for a defamation claim against GTE.

■ Lastly, Westfall presents evidence regarding an investigation conducted by Dan Ward, the assistant general counsel for antitrust and litigation for GTE. Ward was responsible for the legal side of the administration of GTE's commercial guidelines and

---

**12.** Oral Deposition of Bonnie J. Westfall, at 215, Exhibit A to Defendants' Motion for Summary Judgment (Dec. 4, 1995).

**13.** Oral Deposition of Bonnie J. Westfall, at 216, Exhibit A to Defendants' Motion for Summary Judgment (Dec. 4, 1995).

**14.** Plaintiff Bonnie J. Westfall's Response to Defendants' Motion for Summary Judgment and Brief in Support, at 20 (Jan. 8, 1996).

**15.** Memorandum from Vice President and General Counsel Richard Cahill and Vice President-IC Markets Katherine Harless to Gerald Dinsmore, Michael Esstman, Kent Foster, and Thomas White, dated July 25, 1994, at GTE W03437, Exhibit F to Plaintiff Bonnie J. Westfall's Response to Defendants' Motion for Summary Judgment and Brief in Support (Jan. 8, 1996).

**16.** Plaintiff's Second Supplemental Response and Brief to Defendants' Motion for Summary Judgment, at 3–4 (May 1, 1996).

policies. He investigated the alleged prepayments to vendors and prepared a report of his investigation. Westfall contends that Ward conducted the investigation in a way that slandered her because he did not keep the investigation and his report confidential. She presents evidence that Ward discussed the investigation with J. Michael Kelly, Toni Kubly, John C. Bain, Richard Cahill, Dean C. Rohrer, and W.D. Wilson. She also contends that Ward's discussion of the investigation was slanderous because it was not his responsibility to recommend or approve of discipline. Ward testifies in his deposition that it was not his function in the investigation to recommend or approve of discipline of persons involved in violations of GTE's commercial guidelines.

GTE contends that Ward's investigation cannot serve as the basis to impose liability for defamation on GTE. It points out that Ward was responsible for the administration of GTE's commercial guidelines and investigated alleged violations of those guidelines as part of his job. It contends that Westfall's evidence only shows that Ward discussed the investigation with persons who were interested in its progress. For example, Kelly is the senior vice president of finance for GTE; Kubly is the western regional director for GTE's internal auditing; Bain is Kubly's supervisor; Cahill is general counsel for GTE's telephone operations; Rohrer is GTE's assistant comptroller for internal auditing; and Wilson is a vice president and the comptroller for GTE. GTE contends that Ward's discussions with these persons are protected by a qualified privilege. It also points out that no evidence indicates that any statement made during these conversations was defamatory.

Westfall's evidence regarding Ward's investigation does not raise a genuine issue on a claim for slander against GTE. The evidence shows that while it was not Ward's function in the investigation to recommend or approve discipline, that it was his responsibility to investigate alleged violations of GTE's commercial guidelines. The evidence shows that he discussed the investigation with upper GTE officials and officials from internal auditing. *Martin v. Southwestern Elec.*

*Power Co.,* 860 S.W.2d 197 (Tex.App.—Texarkana 1993, writ denied) (holding company president enjoyed qualified privilege to send a letter describing plaintiff's history of safety violations to foremen and supervisors). Westfall presents no evidence that would take these conversations outside of GTE's qualified privilege. *Johnson,* 891 S.W.2d at 646–47 (statements made during an investigation into an allegation of theft were qualifiedly privileged because they were made to night managers of the store, the assistant store manager, the director of the store, the district manager, and the vice president of human resources). Also, no evidence indicates that anything said in the conversations defamed Westfall.

In summary, Westfall produces no evidence creating a genuine issue of material fact on her claim for defamation. Much of her evidence is subject to the hearsay objection described in *Wells.* Other statements which she contends are defamatory are either substantially true or are not defamatory. Also, some of the statements amount to nothing more than office rumor for which GTE cannot be held liable. Lastly, some of the statements are subject to a qualified privilege, on which Westfall fails to present clear and convincing evidence that the speaker acted out of actual malice. Thus, GTE's motion on her defamation claim is granted.

### Claim for Breach of Contract

 With regard to her claim for breach of contract, GTE contends that Westfall was an at-will employee. It points to the portion of Westfall's deposition in which she testifies that she does not recall seeing or signing a written employment contract.

In response, Westfall contends that she enjoyed a satisfaction contract with GTE. In her affidavit, she states that her supervisors told her that if she continued to do a good job that her position would be secure. She states that she was employed at GTE since 1970 and regularly received positive evaluations, promotions, and raises.

 An employer and an employee may convert an at-will employment relationship into a satisfaction contract by an oral modification. *Goodyear Tire and Rubber Co.*

*v. Portilla,* 836 S.W.2d 664, 667–68 (Tex. App.—Corpus Christi 1992), *aff'd,* 879 S.W.2d 47 (Tex.1994). A satisfaction contract is formed when the employer represents to the employee that she will not be discharged but for unsatisfactory performance. *Id.* at 668. The employee must show that a person with the authority to do so modified her contract. *Id.* In this case, Westfall has raised a genuine issue of fact as to whether her supervisors created a satisfaction contract with her. GTE's motion on this claim is denied.

### Claim for Promissory Estoppel

GTE moves for summary judgment on Westfall's claim for promissory estoppel. Westfall must show: (1) that GTE made a promise, (2) which GTE should have reasonably expected would induce action or forbearance on the part of Westfall, (3) which did in fact produce action or forbearance by Westfall, and (4) which must be enforced to prevent injustice. *Conway v. Saudi Arabian Oil Co.,* 867 F.Supp. 539, 543 (S.D.Tex.1994). GTE only contends that Westfall cannot present evidence of a promise which is not "too vague and illusory to support a claim for promissory estoppel." *Id.*

In response, Westfall relies again on her affidavit statement that her supervisors told her that if she continued to do a good job that her position would be secure.

Again, Westfall raises a genuine issue as to whether her supervisors made her a sufficiently concrete promise on which to base a claim for promissory estoppel. GTE's motion on this claim is denied.

### Claim for Wrongful Discharge

In connection with its summary judgment motion on Westfall's claims for breach of contract and promissory estoppel, GTE contends that it is entitled to summary judgment on her wrongful discharge claim.

In response, Westfall merely states, "Defendants have not met their summary judgment burden of showing that she was not terminated in violation of Title VII."

Westfall fails to show that she has a separate claim for wrongful discharge. To the extent she relies on Title VII as the basis for the claim, her actual claim under Title VII will provide her with any remedy to which she is entitled. Otherwise, her claim appears redundant of her claims for breach of contract and promissory estoppel. GTE's motion on the claim is granted.

### Claim for Intentional Infliction of Emotional Distress

On her claim for intentional infliction of emotional distress, Westfall must show: (1) that GTE acted intentionally or recklessly; (2) that the conduct was extreme and outrageous; (3) that GTE's actions caused her emotional distress; and (4) that the emotional distress was severe. *Tidelands Auto. Club v. Walters,* 699 S.W.2d 939, 942 (Tex.App.—Beaumont 1985, writ ref'd n.r.e.). GTE contends that its conduct was not extreme and outrageous as a matter of law.

In response, Westfall relies on the deposition testimony of Haapasaari that Schmitt called a one to two minute meeting with some of his and Westfall's subordinates. At the meeting, Schmitt stated that "there had been an investigation into a misappropriation of funds and some other stuff, and then he said that Bonnie [Westfall] had chosen to leave the company." [17] Westfall states in her affidavit that Schmitt's statements at the meeting "had a devastating effect on my psychological well-being and relationships with some of my colleagues at GTE." She contends that this "assault on her character" constitutes extreme and outrageous behavior because she was a long-time employee of GTE.

The Court finds that the behavior of which Westfall complains, even if true, is not extreme and outrageous as a matter of law. An employer's conduct is extreme and outrageous when that conduct exceeds all bounds usually tolerated by civilized society and is calculated to cause serious emotional distress. *Grizzle v. Travelers Health Network, Inc.,* 14 F.3d 261, 269 & n. 28 (5th

---

**17.** Oral Deposition of Tammy Haapasaari, at 11–13, Exhibit 6 to Plaintiff Bonnie J. Westfall's Response to Defendants' Motion for Summary Judgment and Brief in Support (Jan. 8, 1996).

Cir.1994). It is not enough that GTE may have acted with criminal or tortious intent or that its conduct may be characterized by malice. *Id.; Wilson v. Monarch Paper Co.*, 939 F.2d 1138, 1142–43 (5th Cir.1991). It is not enough that GTE may have engaged in an organized and premeditated attempt to discharge Westfall. *Guthrie v. Tifco Indust.*, 941 F.2d 374 (5th Cir.1991), *cert. denied*, 503 U.S. 908, 112 S.Ct. 1267, 117 L.Ed.2d 495 (1992).

The conduct occurred within the course of a running employment dispute. *Wilson*, 939 F.2d at 1145 (stating that only in the *"most unusual cases"* will conduct occurring in the employment context give rise to an independent claim for intentional infliction of emotional distress) (emphasis in original); *Cook v. Fidelity Investments*, 908 F.Supp. 438, 440–41 (N.D.Tex.1995) (collecting employment cases). It is not enough that Schmitt may have attributed a misappropriation of funds to Westfall. *Diamond Shamrock Refining and Marketing Co. v. Mendez*, 844 S.W.2d 198, 202 (Tex.1992) (holding an employer's conduct in discharging an employee and "falsely depicting him in the community as a thief" was not extreme and outrageous). GTE's motion on this claim is granted.

### Conclusion

In summary, Westfall presents sufficient evidence to create a genuine issue of material fact on her claim for sex discrimination. Most importantly, she presents evidence that male co-workers were not as severely disciplined for similar or more egregious conduct. In contrast, Westfall presents no evidence that GTE discriminated against her on account of her age. Also, she presents no evidence that she was disabled within the meaning of the ADA or the TCHRA. Westfall's evidence on her defamation claim is subject to a hearsay objection or consists of non-defamatory statements, statements not attributable to GTE, or statements protected by a qualified privilege. She presents sufficient evidence to preclude summary judgment on her claims for breach of contract and promissory estoppel but she produces no authority or evidence on her claim for wrongful discharge. Lastly, she presents no evidence from which a jury could find that GTE's conduct towards her was extreme and outrageous as a matter of law.

It is therefore ORDERED that Defendants' Motion for Summary Judgment, filed December 4, 1995, is granted in part and denied in part.

The following claims of Plaintiff Bonnie J. Westfall against Defendants GTE North Incorporated and GTE Corporation are dismissed with prejudice: (1) claims for age discrimination under the Age Discrimination in Employment Act and the Texas Commission on Human Rights Act, (2) claims for disability discrimination under the Americans With Disabilities Act and the Texas Commission on Human Rights Act, (3) claim for defamation, (4) claim for wrongful discharge, and (5) claim for intentional infliction of emotional distress.

Plaintiff's claims for sex discrimination under Title VII and the Texas Commission on Human Rights Act, for breach of contract, and for promissory estoppel are not dismissed.