Therese **SCRIBNER** and **Resource Recruiters, Inc., Plaintiffs,**

v.

**WAFFLE HOUSE, INC., Defendant.**

No. CA 3–91–CV–2667–R.

United States District Court, N.D. Texas, Dallas Division.

Feb. 3, 1998.

---

Michael P. Metcalf, Law Office of Michael P. Metcalf, Dallas, TX, for Plaintiff.

William Patrick Finegan, Haynes & Boone, Dallas, TX, Michael W. Fox, Haynes & Boone, San Antonio, TX, for Defendant.

Windle Turley, Law Office of Windle Turley, Dallas, TX, movant, pro se.

## MEMORANDUM OPINION AND ORDER

BUCHMEYER, Chief Judge.

Now before this Court are the following post-trial motions: 1) Plaintiffs' Motion to Amend Judgment Order, filed March 21, 1997; 2) Defendant's Motion to Recuse and to Vacate the Judgment and/or to Alter and Amend Judgment, to Amend Findings, to Vacate Findings, and/or for New Trial and/or for Remittitur, filed March 24, 1997; 3) Plaintiffs' Motion for Leave to File Amended Complaint, filed April 29, 1997; and 4) Plaintiffs' Supplemental Motion to Amend Judgment Order, filed May 9, 1997.

The Court has considered the pertinent pleadings, and for the reasons stated below, (1) Plaintiffs' Motion to Amend Judgment Order is GRANTED; (2) Defendant's Motion to Recuse and to Vacate the Judgment and/or to Alter and Amend Judgment, to Amend Findings, to Vacate Findings, and/or for New Trial and/or for Remittitur is DENIED; (3) Plaintiffs' Motion for Leave to File Amended Complaint is GRANTED; and (4) Plaintiffs' Supplemental Motion to Amend Judgment Order is GRANTED. These rulings modify this Court's earlier Memorandum Opinion, filed March 7, 1997, *Scribner v. Waffle House, Inc.*, 976 F.Supp. 439

(N.D.Tex.1997), as well as the final judgment, also filed March 7, 1997.

## A. Plaintiffs' Motion for Leave to File Amended Complaint

█ Plaintiffs have moved to amend their complaint pursuant to Fed.R.Civ.P. 15(b) to add violations of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, et seq., and the Equal Pay Act, 29 U.S.C. § 206(d). Rule 15(b) provides that "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." When that is the case, the rule allows for "[s]uch amendment of the pleadings as may be necessary to cause them to conform to the evidence." It explicitly states that such issues may be raised "at any time, even after judgment."

This Court finds that the evidence presented at trial supported claims under Title VII and the Equal Pay Act and that Waffle House impliedly consented to the trial of these issues because they failed to object to the evidence introduced at trial. Plaintiffs' Motion to Amend the Pleadings is squarely within the purview of Rule 15(b) and is hence granted.

## B. Plaintiffs' Motions to Amend Judgment

Plaintiffs request that this Court amend the judgment order in two ways. First, they ask this Court to clarify that the damages awarded for mental anguish and for punitive damages are supported by the finding of intentional infliction of emotional distress. Second, they ask that this Court adds pre-judgment and post-judgment interest to the judgment.

### 1. Intentional Infliction of Emotional Distress

Both Plaintiffs and Defendant have pointed out that the damages awarded by this Court for mental anguish and punitive damages may not be supported by Title VII or the

Texas Commission on Human Rights Act (TCHRA). Defendant asks, not surprisingly, that those damages be set aside for that reason. However, such concerns are a mere formality in this case, because the contested damages are fully supported by this Court's finding of intentional infliction of emotional distress. Lest there be any confusion, however, this Court will clarify its earlier opinion.

█ First, this Court reiterates its finding that the emotional distress damages equal the sum of (1) mental anguish damages caused by sexual harassment, and (2) the mental anguish caused by defamation.[1] 976 F.Supp. at 500. Thus the sexual harassment mental anguish damages are recoverable for Waffle House's tort violations independently of its statutory violations. Second, because the Defendant's acts of sexual harassment, upon which the punitive award was based, violated common tort law as well as statutory anti-discrimination law, the punitive damages are justified regardless of those statutes. Thus the possibility that actual and punitive damages are limited for Title VII and the TCHRA does not change the fact such damages are unquestionably available for tort violations. In short, all damage awards that are attributed in the Memorandum Opinion to "sexual harassment" are independently supported by Defendant's intentional infliction of emotional distress on Scribner, notwithstanding that Defendant's behavior also violated state and federal anti-discrimination statute.

█ Waffle House subsequently argues, unconvincingly, that Plaintiffs' tort claim is preempted by the TCHRA. The sexual harassment suffered by Scribner goes well beyond the sort of discrimination that the TCHRA was designed to preempt. Although the TCHRA has been held to preempt common law claims for negligent supervision, *Cook v. Fidelity Investments*, 908 F.Supp. 438, 442 (N.D.Tex.1995), none of the cases cited by Waffle House hold that intentional

---

**1.** It should be noted that the first term in this equation, as calculated in section IV.B.2.ii of that opinion, is $358,000. 976 F.Supp. at 496. The second term, as calculated in section IV.D.2.ii of that opinion, is $119,500. *Id.* at 499. Thus the total emotional distress damage award would be $477,500, *not* $119,500 as suggested in section IV.E, *id.* at 500.

infliction of emotional distress claims based on workplace harassment are also preempted.

Courts in this district routinely address intentional infliction of emotional distress claims separately from those based on TCHRA. *See, e.g., Roark v. Kidder, Peabody & Co.,* 959 F.Supp. 379 (N.D.Tex.1997); *Westfall v. GTE North Inc.,* 956 F.Supp. 707 (N.D.Tex.1996). In fact, the *Cook* opinion on which Waffle House relies addressed intentional infliction of emotional distress independently of both the TCHRA claim and the negligent supervision claim that was ultimately found to be preempted. *Cook,* 908 F.Supp. at 439. Even more on point is the Fifth Circuit's holding in *Prunty v. Arkansas Freightways, Inc.,* 16 F.3d 649 (5th Cir.1994). There the Fifth Circuit found that an employer's sexual harassment of an employee amounted to intentional infliction of emotional distress, and that this allowed the employee to recover compensatory and punitive damages even where damages were unavailable under Title VII and the TCHRA. *Id.* at 652, 654.

*Cannizzaro v. Neiman Marcus, Inc.,* 979 F.Supp. 465, 479 (N.D.Tex.1997) does suggest that some claims for intentional infliction of emotional distress may be preempted by the TCHRA. In that case, however, the plaintiff alleged merely that she was terminated because of her disability. Though illegal, such behavior was not found to be "extreme and outrageous." It was a simple case of discriminatory termination, precisely the kind of tort claim the TCHRA was designed to preempt. It seems to this Court, however, that any time a plaintiff *does* establish the "extreme and outrageous" behavior required to sustain a claim of intentional infliction of emotional distress, that plaintiff has *necessarily* established more than mere discrimination and should not be preempted by the TCHRA. In other words, although an unsuccessful emotional distress claim may be preempted by the TCHRA, a successful claim such as the one here—by definition—cannot be.

Consequently, the "Summary of Actual and Punitive Damages," *Scribner,* 976 F.Supp. at 510, is modified to read as follows:

| | |
|---|---|
| Willful Pay Discrimination (Scribner) | $ 70,250 |
| Sexual Harassment (Scribner) | |
| lost income | 115,775 |
| Intentional Interference (Resource) | |
| lost income | 24,188 |
| Defamation (Scribner) | |
| actual damages | -nominal- |
| mental anguish | 119,500 |
| Emotional Distress (Scribner) | |
| mental anguish | 358,000 |
| Punitive damages for intentional infliction of emotional distress (Scribner) | 6,300,000 |
| Punitive damages for defamation (Scribner) and tortious interference with contract (Resource) | 1,149,504 |
| TOTAL | $8,137,217 |

### 2. *Pre–Judgment and Post–Judgment Interest*

Plaintiffs also request that this Court amend the judgment to include pre-judgment and post-judgment interest. Specifically, they request pre-judgment interest on the damages awarded for pay discrimination, sexual harassment, intentional infliction of emotional distress, defamation, and intentional interference with contractual relationships. Such interest is appropriate at a non-com-

pounding rate of 10%, to be calculated through March 7, 1997, the date of judgment. In addition, Plaintiffs request post-judgment interest at a rate of 5.67%, compounded annually. This is also appropriate.

### C. Defendant's Motion

In its lengthily-titled motion, Waffle House objects to numerous aspects of this Court's opinion. It claims that (1) this Court relied

on evidence outside the record, (2) the damages awarded were improper and excessive, (3) certain findings were unsupported or irrelevant, and (4) this Court was biased against Waffle House. Thus Waffle House requests that this Court recuse itself, vacate or amend the judgment, vacate or amend the findings, grant a new trial, remit the damages awarded, or grant any combination of the above remedies. For the reasons described below, this Court finds that such relief is not warranted and that their motion should be denied.

### 1. *Evidence Outside the Record*

■ First, Waffle House complains that this Court considered depositions that had not been admitted and were hence not part of the trial record. In fact, numerous depositions were admitted into evidence, and this Court relied only on those depositions properly before it. Second, Waffle House objects to the fact that this Court referred to its own trial notes in its opinion. It fails to demonstrate that such behavior is inappropriate, however. According to the United States Supreme Court, "only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said." *Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564, 575, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). The fact that this Court recorded those impressions during the course of the trial does not make its findings any less valid. If anything, it bolsters those findings.

### 2. *Damages*

Waffle House objects to both the actual and punitive damages awarded by this Court. Many of these objections have already been addressed above. In addition, however, Waffle House claims that there is no evidence to support this Court's damage awards for tortious interference with contract and for mental anguish caused by defamation. Those awards are well-supported by the evidence, and this Court stands by its earlier reasoning. *Scribner,* 976 F.Supp. at 497, 499. Waffle House also objects to the method by which Scribner's income was compared to those of male recruiters for the purpose of calculating damages. This Court finds no error with its calculations.

Waffle House is also troubled by this Court's punitive damage award. First and foremost, it argues that the punitive damages are excessive. As to that argument, this Court remains convinced by the exhaustive analysis of punitive damages undertaken in its earlier opinion. 976 F.Supp. at 500–10. Waffle House also objects to the fact that the punitive damages awarded to Scribner and Resource Recruiters based on defamation and tortious interference were calculated jointly. This Court fails to see how this prejudices Waffle House in any way. Defendants further claim that punitive damages are capped pursuant to Tex.Civ.Code § 41.001, et seq. Because the statutory cap does not apply to intentional tort cases filed before September 1, 1995, this Court need not address it. *See* Tex.Civ.Code Ann. § 41.001 (West 1997); *Transmission Exchange Inc. v. Long,* 821 S.W.2d 265, 272 (Tex.App.—Houston [1st Dist.] 1991, writ denied).

■ In addition, Waffle House argues that the punitive damage award was improperly based on Waffle House's attempts to cover up their repulsive acts by lying under oath and suborning perjury. The law in the Fifth Circuit suggests that such behavior is properly taken into account in establishing punitive damages. The court in *Eichenseer v. Reserve Life Insurance* held that a company's failure to investigate claims of wrongdoing supported a finding of punitive damages. 934 F.2d 1377, 1383 (5th Cir.1991). If failing to investigate the conduct that results in civil liability warrants punitive damages, surely active attempts to cover up such conduct—like suborning perjury—would be similarly supportive. In fact, in the punitive damage scheme upheld by the Supreme Court in *Pacific Mutual Life Insurance. v. Haslip,* a defendant's efforts to conceal its conduct is explicitly cited as behavior warranting punitive damages. 499 U.S. 1, 22, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991).[2]

2. Waffle House does not argue that perjury and suborning perjury are protected speech under

Finally, Waffle House argues that this Court improperly based its determination of punitive damages on acts of racial discrimination by Waffle House. The punitive damage award in this case was not based on the many examples of racially discriminatory behavior that were revealed at trial. Although this Court's opinion parenthetically mentioned Defendant's abuse of minority employees in summarizing the reasons for punitive damages, the reference was just that—parenthetical.[3] *Scribner,* 976 F.Supp. at 510. Such behavior did not factor into the punitive damage calculation. Indeed, where this Court listed the "reprehensible conduct" that warranted punitive damages—the conduct based on which those damages were calculated—there was no mention of Waffle House's racially discriminatory behavior. *Id.* at 507.

### 3. *Findings*

Waffle House objects to several of the findings made by this Court. First it claims it was prejudiced by irrelevant findings concerning racial discrimination. However, none of the contested references to racial discrimination prejudiced the defendant. It is even misleading to refer to them as findings of racial discrimination, because none of the contested references purport to establish that Waffle House committed actionable discrimination based on race.[4] Waffle House also objects to this Court's findings of perjury and bribery. This Court's discussion of these issues was related to its credibility determinations. Furthermore, as described above, such acts are relevant to calculating punitive damages.

### 4. *Impartiality*

■ Finally, Waffle House argues that "there is an objectively reasonable basis for questioning [this Court's] impartiality." It cites many aspects of this Court's opinion as evidence of bias. Many of these have already been addressed in other parts of the opinion and will not be rehashed.

Defendant objects to this Court's "attitude towards witnesses and evidence, primarily because this Court did not believe Defendant's witnesses and found the acts they committed were deplorable." Such an "attitude" does not indicate bias. The Supreme Court has acknowledged:

> "The judge who presides at a trial may, upon completion of the evidence, be exceedingly ill disposed towards the defendant, who has been shown to be a thoroughly reprehensible person. But the judge is not thereby recusable for bias or prejudice, since his knowledge and the opinion it produced were properly and necessarily acquired in the course of the proceedings, and are indeed sometimes (as in a bench trial) necessary to completion of the judge's task."

*Liteky v. United States,* 510 U.S. 540, 550–51, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994). This Court's disposition towards the witnesses and evidence derived from the content of the testimony itself. The manner in which the Court described the Defendant's actions reflects only the atrociousness of those actions.

Waffle House also takes issue with the fact that this Court in its opinion referred to the Plaintiff by her first name, Therese. This emphatically does not cast doubt upon this Court's impartiality.[5] During trial, Plaintiff

---

the First Amendment, and this Court will not raise the issue *sua sponte.*

**3.** It was literally in parentheses.

**4.** For example, the reference at pages 450–51 to the racial make-up of Waffle House's district managers was merely descriptive, not intended to establish any actionable racial discrimination. Note 50 recounted testimony about Waffle House's racially discriminatory treatment of applicants and employees as support for Scribner's own testimony that for recruiting purposes, Waffle House "pretty much wanted white males." Such testimony buttresses her relevant testimony and is thus itself relevant. Finally, in note 97,

this Court referred to the discriminatory firing of Steve Williams to explain why it rejected Defendant's attempt to discredit Mr. Williams's testimony.

**5.** If anything, referring to a woman by her first name may indicate bias *against* her. *See* Gender Bias Reform Implementation Committee, Guidelines for Gender–Neutral Courtroom Procedures, 60 Tex. Bar J. 166 (1997) (affirming that addressing women by their first names while addressing men as "Mr. so-and-so" may perpetuate gender bias). *But . cf.* Martti Gronfors, Institutional Non–Marriage in the Finnish Roma Community and Its Relationship to Rom Traditional Law, 45 Am. J. Comp. L. 305, 320, 324–26 (explaining

was constantly addressed or referred to by her first name or nickname (Terez) by the Waffle House witnesses and by the Waffle House lawyers, as well as by her own attorney. On occasion, the Court—without objection—also referred to the Plaintiff as "Therese" in asking questions. For Defendant to argue that using Plaintiff's first name indicates bias in *her* favor—when it sponsored witnesses who referred to Plaintiff as "little Ms. big tits" (and worse)—is preposterous to say the very least.

For the reasons stated above, Plaintiffs' motions are granted and Defendant's motion is denied. The Judgment shall be amended accordingly.

It is so ORDERED.

that although women in certain Finnish gypsy communities are never referred to as "Mrs.," such a practice derives from the importance of kin-based solidarity).