**Rosie M. PADILLA, Plaintiff,**

v.

**CARRIER AIR CONDITIONING, Defendant.**

No. 6:97cv998.

United States District Court,
E.D. Texas,
Tyler Division.

May 12, 1999.

652

Sten Marti Langsjoen, Attorney at Law, Tyler, TX, Carl Henry Franklin, Law Office of Carl Henry, Frankliin, Shreveport, LA, Rosie M Padilla, plaintiff.

Caryn Lisa Carson, Sheinfeld Maley & Kay, Dallas, TX, United Technologies, of Carrier, defendant.

## *ORDER ON SUMMARY JUDGMENT*

STEGER, District Judge.

On this day came on to be considered *Defendant Carrier Corporation's Motion for Summary Judgment and Supporting Brief* (Docket No. 29). After careful consideration, the Court is of the opinion that the following order should issue.

The plaintiff employee alleges, *inter alia*, racial discrimination, hostile work environment, retaliation, and defamation against the defendant company. The defendant has moved for summary judgment on all claims.

**1.** *First Amended Complaint ("Complaint")* (Docket No. 13) at ¶ 5.

**2.** *Id.* at ¶ 6.

**3.** *Id.* at ¶ 10.

**4.** *Complaint* at ¶ 11. The plaintiff's *Complaint* frequently refers to Fuller as "Defendant, Burlie Fuller." However, the lawsuit is not so captioned, nor was summons issued for Fuller.

### FACTS AND PROCEDURAL HISTORY

The plaintiff, Rosie M. Padilla ("Padilla"), is a black female domiciled in Tyler, Texas, and is employed by the defendant company.[1]

The defendant, Carrier Air Conditioning ("Carrier"), is a private business organization under the laws of Texas and domiciled in Tyler, Texas.[2]

Padilla began working for Carrier on June 27, 1989, as a warehouse shipper.[3] Padilla's supervisor was Burlie Fuller ("Fuller").[4]

On or about June 27, 1997, Padilla hurt her back when unloading and lifting units in the warehouse. She immediately sought emergency medical treatment at a local hospital and the opinion of her primary care physician on the following day.[5]

Padilla did not return to work at Carrier until August 5, 1997. Due to the on-the-job injury, she filed for worker's compensation.[6]

Upon returning to work, the plaintiff claims that she was assigned by Fuller to unload heavy units without assistance. Because the heavy lifting was further aggravating her back injury, Padilla filed a harassment complaint against Fuller.[7]

Padilla further alleges that, subsequent to her harassment complaint, Fuller retaliated by scrutinizing her work and assigning her to "receive in the warehouse."[8]

Padilla alleges that, due to the heavy lifting, she injured her back a second time, and was assigned to light duty at the main plant, where she remained from October 27, 1997, to October 29, 1997.[9] Padilla com-

**5.** *Id.* at ¶ 10.

**6.** *Id.* at ¶ 12.

**7.** *Id.* at ¶ 13.

**8.** *Id.* at ¶ 14.

**9.** *Id.* at ¶¶ 15–16.

plains that, in addition to not receiving pay since January 1998, she was demoted and rendered unable to receive incentives, overtime pay, and holiday pay. She also contends that Carrier did not pay her medical expenses.[10]

Padilla then asserts that, on October 30, 1997, she returned to her regular job duties, including heavy lifting. Consequently, her back began hurting again, and she did not report to work on October 31, 1997, instead seeking emergency medical treatment.[11]

When she returned to work, Padilla "began to hear rumors that alleged sexual activities involving [herself] and male employees at Carrier and a male employee of a trucking company who made deliveries at Carrier." [12] The delivery man alluded to in the *First Amended Complaint* was Dale Ward of U.S. Xpress.[13] Allegedly, Fuller told Ward that Padilla "sleeps around," comparing her to an "old dog," and suggesting that he ask "any of the guys" at the main plant about her.[14]

Padilla alleges that her complaint to the Human Resources department about these "slanderous remarks" was ignored or neglected.[15]

The *First Amended Complaint* goes on to state that Padilla:

> [B]egan feeling that she was working in a hostile work environment because other employees began to withdraw and not associate with her. One employee threatened plaintiff, telling plaintiff that

he had a gun in his truck that would take care of her.[16]

These events allegedly caused the plaintiff to seek the help of a psychiatrist.[17]

Therefore, on November 10, 1997, the plaintiff filed the instant cause of action, seeking damages, costs, and attorney's fees for her claims, including hostile work environment, discrimination, and emotional distress.[18]

On August 18, 1998, Padilla's attorney, Carl Henry Franklin, sought leave to withdraw as counsel (Docket No. 20). The Court granted his request on September 1, 1998 (Docket No. 21).

On September 4, 1998, Sten M. Langsjoen entered his notice of appearance as Padilla's attorney (Docket No. 23).

On November 20, 1998, Carrier filed the instant motion for summary judgment, which is now ripe for consideration.

## STANDARD OF REVIEW

Carrier Air Conditioning, the defendant in this case, has moved for summary judgment. A party is entitled to summary judgment on all or any part of a claim "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." [19] The moving party must show initially that there is no genuine issue of any material fact.[20] The movant may meet this burden by pointing out the absence of evidence supporting any essential element of the non-moving party's claim.[21]

---

10. *Id.* at ¶¶ 16–17.

11. *Id.* at ¶ 18.

12. *Id.* at ¶ 19.

13. *Deposition of Rosie M. Padilla ("Deposition")* at p. 108.

14. *Complaint* at ¶ 19.

15. *Id.* at ¶ 20.

16. *Id.* at ¶ 21.

17. *Id.* at ¶ 22.

18. *Id.* at ¶¶ 23–24.

19. FED.R.CIV.P. 56(c). *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

20. *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505, 91 L.Ed.2d 202.

21. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In deciding whether to grant a motion for summary judgment, the Court "review[s] the evidence and inferences to be drawn therefrom in the light most favorable to the nonmoving party."[22] An issue is "genuine" only if the evidence could lead a reasonable jury to return a verdict for the nonmoving party.[23]

The opposing party may not rest on the mere allegations or denials of artful pleading, but must set forth affirmative facts that show a genuine issue for trial.[24] This requires that the non-moving party make a showing sufficient to establish the existence of any element essential to that party's case, and on which that party will bear the burden at trial.[25]

For the reasons set out below, the Court finds that there is no genuine issue as to any material fact and summary judgment is therefore proper in this case.

### ANALYSIS

In relation to the defendant's motion for summary judgment, the Court will analyze the following claims of the plaintiff:

(A) Race Discrimination;

(B) Hostile Work Environment;

(C) Retaliation;

(D) Negligent Supervision;

(E) Slander; and

(F) Worker's Compensation Retaliation. The Court will discuss each of these issues individually in the order listed above.

### (A) Race Discrimination.

The plaintiff's complaint implicitly alleges discrimination by Carrier based on her race. The plaintiff's complaint does not support such an allegation, and the Court finds that summary judgment on this claim should be granted.

Title VII proscribes an employer discriminating against a member of a protected class, providing that: "It shall be an unlawful employment practice for an employer—(1) to fail or refuse to hire or to discharge any individual ... because of such individual's race, color, religion, sex, or national origin."[26] The plaintiff bears the initial burden of establishing a prima facie case of discrimination.[27] Establishment of a prima facie case raises a presumption of discrimination, which the defendant may rebut by articulating a legitimate, nondiscriminatory reason for its actions.[28] If the defendant is able to surmount this presumption of discrimination with a legitimate reason, the burden returns to the plaintiff, who must then show that the proffered reasons were merely a pretext for discrimination.[29] The plaintiff

---

**22.** *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 189 (5th Cir.1991) (*citing Duvall v. The Ritz Carlton Hotel Co.*, 946 F.2d 418, 420 (5th Cir.1991), and quoting FED.R.CIV.P. 56(c)).

**23.** *Thomas v. Price*, 975 F.2d 231, 235 (5th Cir.1992) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

**24.** *Anderson*, 477 U.S. at 248, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202.

**25.** *Nowlin v. R.T.C.*, 33 F.3d 498, 501 (5th Cir.1994) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

**26.** 42 U.S.C. §§ 2000e–2(a)(1).

**27.** *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 957 (5th Cir.1993).

**28.** *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 1094–95, 67 L.Ed.2d 207 (1981); *Bodenheimer*, 5 F.3d at 957. "A prima facie case under *McDonnell Douglas* raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors. And we are willing to presume this largely because we know from our experience that more often than not people do not act in a totally arbitrary manner, without any underlying reasons, especially in a business setting." [citations omitted] *Furnco Const. Corp. v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 2950, 57 L.Ed.2d 957 (1978).

**29.** *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993); *Bodenheimer*, 5 F.3d at 957.

retains the ultimate burden of persuasion throughout the whole case.[30]

 The plaintiff may establish a prima facie case of discrimination under Title VII by proving that she is a member of a protected class and that she suffered an adverse employment decision.[31] The plaintiff must show that she was treated differently from similarly situated individuals and that there was a causal connection between her race and the adverse employment decision.[32] The defendant correctly points out that the failure to raise a fact question as to whether she suffered an adverse employment decision is dispositive as to the plaintiff's claim.[33] Therefore, the Court will now turn its attention to whether or not the plaintiff suffered an adverse employment decision.

 As a preliminary matter, the Court notes that only "ultimate employment decisions" can constitute adverse employment actions for the purposes of establishing a prima facie case under Title VII.[34] Ultimate employment decisions include acts such as hiring, promoting, compensating, and firing.[35] The Fifth Circuit has held that "Title VII was designed to address ultimate employment decisions, not to address every decision made by employers that arguably might have some tangential effect on those ultimate decisions."[36] The Court has also consistently held that hostility from other employees, and the resulting anxiety, does not constitute an ultimate employment decision.[37] In fact, one recent Fifth Circuit case, *Mattern v. Eastman Kodak Company*, held that the following actions *did not* constitute an adverse employment action:

(1) An alleged visit by supervisors to the employee's home;

(2) A verbal threat of termination;

(3) A reprimand for not being at an assigned station; and

(4) Placement of the plaintiff on "final warning."[38]

Clearly, not every negative experience on the job can give rise to a Title VII claim.

 With this standard in mind, Carrier contends that the plaintiff cannot establish a prima facie case of discrimination because she did not suffer an adverse employment action and there is no evidence suggesting that she was treated differently from a similarly situated employee.[39] In support of its position, the defendant company argues that the allegation in the plaintiff's complaint of a "demotion" to a

---

**30.** *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095.

**31.** *Meinecke v. H & R Block*, 66 F.3d 77, 83 (5th Cir.1995).

**32.** *Furnco*, 438 U.S. at 577, 98 S.Ct. at 2950. In *Furnco*, the plaintiffs were fired, but instead were not hired. Here, the plaintiff claims demotion. However, the *Furnco* Court noted that "[t]he facts necessarily will vary in Title VII cases, and the specification ... of the prima facie proof required from respondent is not necessarily applicable in every respect to differing factual situations." *Id.*, 438 U.S. at 576, 98 S.Ct. at 2949, *citing McDonnell*, 411 U.S. at 802 n. 13, 93 S.Ct. at 1824. The Court instead turned the discussion to whether or not it was more likely than not that such actions were "based on a discriminatory criterion illegal under the Act." *Id.*, *citing Teamsters v. U.S.*, 431 U.S. 324, 358, 97 S.Ct. 1843, 1866, 52 L.Ed.2d 396 (1977).

**33.** *Defendant's Motion for Summary Judgment and Supporting Brief ("Motion")* at p. 8, *citing Ward v. Bechtel Corp.*, 102 F.3d 199, 202 n. 1 (5th Cir.1997).

**34.** *Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 707 (5th Cir.1997).

**35.** *Dollis v. Rubin*, 77 F.3d 777, 782 (5th Cir.1995), *citing Page v. Bolger*, 645 F.2d 227, 233 (4th Cir.), *cert. denied*, 454 U.S. 892, 102 S.Ct. 388, 70 L.Ed.2d 206 (1981).

**36.** *Id.* at 781–82.

**37.** *Mattern*, 104 F.3d at 707. *See also Landgraf v. USI Film Prods.*, 968 F.2d 427, 431 (5th Cir.1992), *affirmed*, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994).

**38.** *Id.* at 708.

**39.** *Motion* at p. 8.

lower pay grade was false. The defendant contends that such an adverse action would be "categorically impossible" under the relevant collective bargaining agreement. Of course, the mere fact that such action is prohibited by the labor union agreement does not mean that it categorically did not happen. Therefore, the Court chooses to rely, as does the defendant, on the plaintiff's own deposition testimony.

In the *Deposition of Rosie M. Padilla*, attached to the *Defendant's Motion for Summary Judgment and Supporting Brief* as "Exhibit A," the plaintiff is unable to testify to a demotion as claimed in her *First Amended Complaint*. The Court will quote directly from the deposition testimony:

Q. And you were a labor grade 5, correct?

A. Correct.

. . .

Q. . . . [F]rom the time you came to Carrier until very recently when they negotiated the new contract, what they called the shift differential, getting a little extra on the second shift, that was fifteen cents, correct?

A. Correct.

Q. So when you moved over to the warehouse, you maintained second shift, correct?

A. Correct.

Q. And so you too, just like at the main plant, they have a shift differential out there, right?

A. Correct.

Q. So you still get your fifteen cents, and you also moved up a notch on the labor scale, correct?

A. Correct.

Q. Now, have you ever bid out of that warehouse shipper job?

A. No, I haven't.

Q. To this day, you're still in the Warehouse shipper position, correct?

A. Yes, I am.

Q. Labor grade 5, correct?

A. Yes.

Q. And out at the warehouse, they have the incentive system just like at the main plant, right?

. . .

I think it's called the incentive system, where depending on your production, you know, they compensate you for that. Like if you're an assembly worker, and you're just busting it out, and there's tons of units going down the line, then the people who worked on those units get a monetary award, correct?

A. Correct.[40]

In the above passage from Padilla's deposition, she admits that she still has the same position and labor grade as she did before the alleged discrimination, earning a total of $14.65 per hour.[41] She also retained the $.15 per hour shift differential.[42] The defendants point out that:

Plaintiff candidly testified that when she was not out on workers' compensation leave or receiving A & S (Accident & Sickness) benefits from the Company, and was actually working in the main plant or at the warehouse, Plaintiff indeed received $14.65 per hour. Clearly, any suggestion that Plaintiff was demoted to a lower pay grade is patently false, as reflected by Plaintiff's own deposition testimony.[43] [citations omitted]

After a review of the summary judgment evidence, specifically Padilla's deposition testimony, the Court agrees with the de-

40. *Deposition* at pp. 49–52.

41. *Id.* at pp. 230–32.

42. *Id.* at p. 51.

43. *Motion* at p. 7, *citing Deposition*, pp. 231–32.

fendant that the plaintiff's suggestion of a demotion is without a factual basis.

Further, the Court finds that the plaintiff's deposition testimony belies her allegations of reduced incentives, lost overtime pay, and lost holiday pay. The Court will again quote directly from the deposition testimony:

Q. Now, if you'll look at what I'm going to mark as Deposition Exhibit No. 18, which is the same from this collective bargaining agreement. Are you familiar with this section Article XIV, Injured Employee Pay?

A. Yes, I am.

. . .

Q. Do you understand that provision?

A. Yes, I do.

Q. Now, were you treated consistent with that last sentence of the collective bargaining agreement while you were on light duty?

A. Yes. Because I was getting overall plant incentive but not what we made from the warehouse base rate.

. . .

Q. So when you talk in your complaint about this demotion, this loss in pay, your complaint is really with the collective bargaining agreement, isn't it?

A. That's true.

Q. And you understand that it's your union that negotiated the collective bargaining agreement with Carrier, and Carrier is bound by this agreement, correct?

A. That's correct.

Q. And you don't claim, do you, that anyone else who was working light duty at the plant at the same time you were received any more incentive pay than you did?

A. No, I don't. But I lost a lot of overtime.

Q. Let's talk about overtime. It's your understanding, is it not, that the long-standing practice and policy throughout the plant for every single person on light duty assignment is that overtime is not available to them? Do you understand that?

A. I understand that.

Q. So your argument in your complaint is not that Carrier treated you any differently; it's just that you don't happen to like what the company and the union have worked out for employees on light duty?

A. No, that's not the issue. No. No.

. . .

Q. So again, it's not that you feel that you've been treated differently than anyone else on light duty; it's just that you don't particularly appreciate what the union and company have negotiated for; is that correct?

A. That's correct.

. . .

Q. So if someone was to say, "Rosie, you didn't receive any incentive," that would be false, right?

. . .

A. It would be false, correct.

Q. Now, this holiday pay, you're not saying when you were working on light duty in the plant you were not able to receive holiday pay, are you?

A. No.

Q. Is there a particular holiday that you are thinking of when your complaint says that you weren't able to get holiday pay?

A. No.[44]

Clearly, the plaintiff's own testimony does not support her allegations of lost incentives, lost overtime, and lost holiday pay.

Consequently, her claim of discrimination cannot survive summary judgment, as she has not shown that she suffered an adverse employment decision. Padilla is

44. *Deposition*, pp. 232–38.

unable even to make a prima facie case of discrimination.

 Further, assuming *arguendo* that the plaintiff had testified to an adverse employment decision, she has not shown that any alleged discrimination was causally connected to her race. Padilla acknowledges that any disparate treatment she received was not because she was black, but because she was injured and on light duty.[45] She also candidly admits that every employment decision made by Carrier was in accordance with the collective bargaining agreement.[46]

Therefore, as Padilla has completely failed to show that she suffered an adverse employment decision causally connected to her protected status, the Court will grant Carrier's motion for summary judgment on her claim of racial discrimination. Even when viewing the evidence in the light most favorable to the plaintiff, there are no genuine questions of material fact on this claim for resolution by a jury.

### (B) Hostile Work Environment.

Padilla further claims that she was subjected to a hostile work environment based on her race.[47] However, the Court finds that this claim lacks merit. The Court will first discuss the elements of the claim and will then apply the facts of the instant case.

 A plaintiff seeking to establish a cause of action for "hostile work environ-ment" must show more than that she was treated badly and she is black.[48] A prima facie case for a claim of hostile work environment includes the following:

(1) That she belongs to a protected class;

(2) That she was subjected to unwelcome harassment;

(3) That the harassment was based on her race;

(4) That the harassment affected affected a term, condition, or privilege of employment; and

(5) Respondeat superior.[49]

 The Court notes that not all workplace "harassment" affects a term, condition, or privilege of employment within the purview of Title VII as developed by case law.[50] A plaintiff must prove that the harassment was so severe and pervasive that it altered the conditions of employment and constituted an abusive working environment.[51] This requires proof, not of a "few isolated incidents of racial enmity," [52] but rather a "steady barrage of opprobrious racial comments." [53]

 The Court further acknowledges that offensive comments, such as a racial epithet, do not significantly affect the conditions of employment so as to give rise to a Title VII claim.[54] Neither do sporadic racial comments during casual

---

45. *Id.* at pp. 234–37.

46. *Id.* at pp. 232–36.

47. *Complaint* at ¶¶ 21, 26.

48. *McCray v. DPC Industries, Inc.,* 942 F.Supp. 288, 292 (E.D.Tex.1996) (Hannah, J.), *citing Jennings v. Uniroyal Plastics Inc.,* 1989 WL 125601 (N.D.Ind.1989).

49. *Id.* at 292, *citing Bivins v. Jeffers Vet Supply,* 873 F.Supp. 1500, 1507 (M.D.Ala.1994).

50. *Meritor Savs. Bank v. Vinson,* 477 U.S. 57, 67, 106 S.Ct. 2399, 2405–06, 91 L.Ed.2d 49 (1986).

51. *Id.,* 477 U.S. at 67, 106 S.Ct. at 2405–06.

52. *Hicks v. Gates Rubber Co.,* 833 F.2d 1406, 1412 (10th Cir.1987).

53. *Bolden v. PRC, Inc.,* 43 F.3d 545, 551 (10th Cir.1994), *cert. denied,* 516 U.S. 826, 116 S.Ct. 92, 133 L.Ed.2d 48 (1995).

54. *Rogers v. EEOC,* 454 F.2d 234, 238 (5th Cir.1971), *cert. denied,* 406 U.S. 957, 92 S.Ct. 2058, 32 L.Ed.2d 343 (1972).

conversation establish the necessary elements for a prima facie case.[55]

A recent Eastern District case clearly defines the parameters of a claim for hostile work environment. In *McCray v. DPC Industries, Inc.*, Judge Hannah held that the defendants were entitled to summary judgment on the plaintiff's claim, despite the following allegations by the plaintiff:

(1) That Pierce, the defendant supervisor, called him "black yankee" and "son";

(2) That Pierce made insulting jokes about three black political leaders;

(3) That Pierce and another truck driver each told a racial joke;

(4) That another truck driver called McCray a "nigger"; and

(5) That he and Pierce had a physical altercation.[56]

The Court wrote that "these actions, while not commendable, are not so numerous and opprobrious as to constitute a hostile work environment." [57] Judge Hannah held that the racist comments were made sporadically, during casual conversation, and could not therefore be violative of Title VII.[58] Furthermore, the physical altercation was not predicated on racial animus, and could not be used as support for such a claim.[59] Perhaps most relevant to the instant case, the Court also cited persuasive authority suggesting that "personality conflicts between employees are not the business of the federal courts." [60]

The Court will now look to the factual allegations of the plaintiff in the instant case. Padilla's *First Amended Complaint* contains the following factual allegations that could conceivably support a claim for hostile work environment:

(1) That Fuller would keep "close watch on everything [Padilla] did while on duty"; [61]

(2) That Fuller "would ease up behind [Padilla] while ... performing her job tasks"; [62]

(3) That Fuller defamed her by spreading rumors of Padilla's sexually promiscuous behavior with truck drivers or male employees of Carrier; [63]

(4) That Fuller told a story in the supervisor's office, within Padilla's hearing, of a former Carrier supervisor named E.J. Johnson sitting beside her in a car, commenting that "she didn't know how it felt for a black man to sit in the car with her"; [64]

(5) That Fuller told Carrier employee Danny Foster, who wanted to buy a car from her, to "call her first before he [came] over there because she has a dog, and the dog has been trained to bite blacks and he doesn't like blacks"; [65]

(6) That Fuller forbade her from talking to Ward; [66] and

(7) That Carrier employees "began to withdraw and not associate with her," and that "[o]ne employee threatened plaintiff, telling her that he had a gun in his truck that would take care of her." [67]

---

55. *Hicks*, 833 F.2d at 1412.

56. *McCray*, 942 F.Supp. at 290–293.

57. *Id.* at 293.

58. *Id.*

59. *Id.*

60. *Id.,citing Vore v. Indiana Bell Tel. Co.*, 32 F.3d 1161, 1162 (7th Cir.1994).

61. *Complaint* at ¶ 14; *Deposition* at p. 111.

62. *Complaint* at ¶ 14; *Deposition* at p. 112.

63. *Complaint* at ¶ 19.

64. *Deposition* at p. 212.

65. *Id.* at pp. 213–14.

66. *Id.* at p. 199.

67. *Complaint* at ¶ 21.

With these factual allegations in mind, the Court will now discuss the individual elements for a prima facie case of hostile work environment. The Court finds investigation of the first two elements unnecessary, as the plaintiff is clearly a member of a protected class and the alleged harassment was presumably "unwelcome." However, the Court must analyze the following required elements:

(1) That the harassment was based on her race;

(2) That the harassment affected a term, condition, or privilege of employment; and

(3) Respondeat superior.

The Court will discuss these elements separately.

### (1) That the harassment was based on her race.

■ The Court must first determine whether the alleged "harassment" was based on Padilla's race. Clearly, however, the allegedly harassing actions were not based on Padilla's race. Fuller's close scrutiny of the plaintiff's work, and even Fuller's allegedly slanderous remarks, seem to have more to do with personal animosity than racial prejudice. In fact, the plaintiff's testimony that Fuller had tried to encourage a relationship between the truck driver, Ward, and another black female Carrier employee, Bobbie Johnson, suggests that the personal friction could have been generated by Fuller's concern for a friend's failing love life. As there is no connection between these allegedly harassing incidents and the plaintiff's protected status, they will not support a claim under Title VII for hostile work environment.

■ As far as Fuller's racially-charged comments—that her dog had been trained to bite blacks, and that she wasn't sure what it felt like for a black man to sit in the car with her—Padilla's offense becomes more understandable. However, sporadic, racially offensive comments, made in casual conversation, are not viola-

tive of Title VII. The mere fact that the plaintiff was subjected to offensive remarks while on the job does not instantly cause her employer to be subject to suit.

### (2) That the harassment affected a term, condition, or privilege of employment.

■ The defendant is also entitled to summary judgment because Padilla has not shown that the alleged harassment affected a term, condition, or privilege of employment. None of the incidents claimed by the plaintiff to suffice for a claim of hostile work environment affect a term, condition, or privilege of her employment. Further, the Court has already held *supra* that the plaintiff did not suffer an adverse employment decision.

### (3) Respondeat superior.

■ Finally, the defendant is also entitled to summary judgment on the hostile environment claim because Padilla has not shown facts that would give rise to a finding of respondeat superior, a necessary element for this claim. The Court finds that the incidents, even if truly injurious under Title VII, cannot be imputed to Defendant Carrier, as these acts would lie outside the legitimate scope of Fuller's authority.

### (C) Retaliation.

■ The plaintiff also claims that Carrier retaliated against her in violation of Title VII. To make a prima facie case of retaliation, the plaintiff must show the following:

(1) That she participated in a statutorily protected activity;

(2) That she received an adverse employment action; and

(3) That a causal connection exists between the protected activity and the

adverse action.[68]

The defendant does not contest that Padilla participated in a statutorily protected activity, namely, that she filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) on August 6, 1997.[69] However, the defendant vociferously objects that the plaintiff has failed to show that she suffered an adverse action that was causally connected to the protected activity.

The Court has already found that the plaintiff did not suffer an adverse employment action. Even viewing the facts in the light most favorable to the plaintiff, neither close scrutiny or personal dislike by Fuller will suffice for a prima facie case. Padilla has not been subject to an ultimate employment decision as defined by the case law—she still works at the same job for the same pay, and the Company consistently followed established policies in its treatment of her.

Further, the plaintiff has failed to show a causal connection between the statutorily protected activity and the alleged adverse action. Padilla has submitted no evidence demonstrating that Fuller knew of the EEOC formal charge of discrimination.[70] The Court also agrees with the defendant that many of Fuller's actions which the plaintiff contends prove retaliatory conduct occurred before the filing of the complaint.[71]

### (D) Negligent Supervision.

The plaintiff also alleges that Carrier was "negligent in supervision and retention of its employees." [72] The defendant counters that the Texas Worker's Compensation Act ("TWCA") bars this claim. The Court agrees.

The defendant correctly points out that, under the TWCA, "[r]ecovery of workers' compensation benefits is the exclusive remedy of an employee covered by workers' compensation insurance coverage or a legal beneficiary against the employer or an agent or employee of the employer for the death of or a work-related injury sustained by the employee." [73] Case law supports the exclusivity of TWCA remedies.[74]

The plaintiff's arguments are self-defeating. An "agent" or "employee" under the section providing that plaintiffs shall have no right of action against any fellow agent or employee of the subscriber is odinarily one for whose conduct the employer would be legally responsible under respondeat superior doctrine.[75] Here, Padilla argues that Carrier may be held responsible for Fuller's actions, as she is an employee and agent for the company.[76] However, under the statute, proof that Fuller is an agent for Carrier only forecloses the possibility of prosecuting this claim, because of the exclusive TWCA remedy.

In fact, the TWCA bars all common-law actions by employees for negligence and

---

**68.** *Armstrong v. City of Dallas,* 997 F.2d 62, 65 n. 3 (5th Cir.1993), *citing De Anda v. St. Joseph Hosp.,* 671 F.2d 850 (5th Cir.1982).

**69.** *Deposition* at pp. 133–34.

**70.** *Id.* at p. 197.

**71.** *Deposition* at p. 119.

**72.** *Complaint* at ¶ 28.

**73.** Tex.Lab.Code Ann. § 408.001(a).

**74.** *Heard v. Texas Compensation Ins. Co.,* 87 F.2d 30 (5th Cir.1936); *Barrera v. Roscoe, Snyder, & Pac. Ry. Co.,* 385 F.Supp. 455 (N.D.Tex.1973); *Dickson v. Silva,* 880 S.W.2d 785 (Tex.App.—Houston [1st Dist.] 1993, *writ*

*denied*); *Traders & General Ins. Co. v. Huntsman,* 125 S.W.2d 431 (Tex.Civ.App.—Fort Worth 1939, *writ dism'd*).

Though Section 408.001 did not take effect until September 1, 1993, the preceding statute contained a similar exclusivity provision. *See* Tex.Rev.Civ.Stat.Ann. §§ 8306 et seq. (Vernon 1967).

**75.** *Darensburg v. Tobey,* 887 S.W.2d 84 (Tex. App.—Dallas 1994, *writ denied*); *See McKelvy v. Barber,* 381 S.W.2d 59 (1964); *Ward v. Wright,* 490 S.W.2d 223 (Tex.Civ.App.—Fort Worth 1973).

**76.** *Response to Motion for Summary Judgment* ("*Response*") (Docket No. 33) at p. 4.

gross negligence with few exceptions.[77] Summary judgment is therefore proper on this claim, as it is prohibited by controlling state law.[78]

Even assuming that a cause of action for negligence properly lies against Carrier, the Court finds that essential elements of such a claim are clearly absent here. First of all, the Court has already found that Padilla did not suffer an adverse employment action. Therefore, the Court finds that Padilla lacks damages of which to complain. Next, the Court finds that the necessary causation is lacking for a negligence claim under the facts as alleged by Padilla. None of the allegedly harmful acts—essentially, a few racist comments around the water cooler—could reasonably be held to be in the course and scope of Fuller's authority. Nor can responsibility be legitimately imputed to Carrier, as any purported negligence was not a "substantial factor" in causing some injury to the plaintiff.[79]

For the reasons stated, the Court holds that summary judgment should be granted on the plaintiff's claim of negligent supervision.

### (E) Slander.

Plaintiff further maintains that Fuller defamed her.[80] Carrier claims that the allegedly defamatory remarks do not amount to slander under Texas law, or, alternatively, that Carrier is not liable for her statements. The Court agrees, holding that summary judgment is proper on the instant claim of defamation.

Slander is a defamatory statement that is orally communicated to a third person without legal excuse.[81] The statement must be false and refer to an ascertainable person.[82] Truth is an affirmative defense to slander.[83]

Generally, there are two types of oral defamatory language: (1) that which is actionable in and of itself, without any allegations of special damages; and (2) that which is actionable only on allegations and proof of special damages.[84] Even though language may tend to expose one to ridicule, hatred, or contempt, it is not actionable in and of itself unless it imputes to another the commission of a crime, has an injurious effect on one's office or business, or unless it falsely or maliciously imputes unchastity to a female.[85]

The defendants point to three general allegations of statements by Fuller that Padilla claims constitute defamation:

(1) That Fuller did not know how it felt for a black man to sit in the car with her;[86]

(2) That Fuller's dog had been trained to bite blacks and did not like

**77.** *Cook v. Fidelity Investments*, 908 F.Supp. 438 (N.D.Tex.1995); *McAlister v. Medina Elec. Co-op. Inc.*, 830 S.W.2d 659 (4th Dist. 1992); *Ghazali v. Southland Corp.*, 669 S.W.2d 770 (Tex.App.—San Antonio 1984).

**78.** *Ward*, 102 F.3d at 203; *Ajaz v. Continental Airlines*, 156 F.R.D. 145, 148–49 (S.D.Tex. 1994).

**79.** *Prudential Ins. Co. v. Jefferson Assoc. Ltd.*, 896 S.W.2d 156, 161 (1995), *citing McClure v. Allied Stores of Texas, Inc.*, 608 S.W.2d 901, 903 (1980).

**80.** *Complaint* at ¶¶ 19, 20, 27.

**81.** *Diaz v. Rankin*, 777 S.W.2d 496, 498 (Tex. App.—Corpus Christi 1989, *no writ*); *Ramos*

*v. Henry C. Beck Co.*, 711 S.W.2d 331, 333 (Tex.App.—Dallas 1986, *no writ*).

**82.** *Randall's Food Markets, Inc. v. Johnson*, 891 S.W.2d 640, 646 (1995).

**83.** *Town of South Padre Island v. Jacobs*, 736 S.W.2d 134, 140 (Tex.App.—Corpus Christi 1986, *writ denied*).

**84.** *Bayoud v. Sigler*, 555 S.W.2d 913 (Tex.Civ. App.—Beaumont 1977, *writ dism'd*).

**85.** *Buck v. Savage*, 323 S.W.2d 363 (Tex.Civ. App.—Houston [1st Dist.] 1959, *writ. ref'd n.r.e.*).

**86.** *Deposition* at p. 212.

blacks;[87] and

(3) That Padilla was "like a she-dog that slept around with a lot of men."[88]

These statements, while racially offensive, do not constitute defamation. The first two comments are not directed at an ascertainable individual, and do not specifically refer to Padilla. Furthermore, they may not even be false. Padilla has shown no special damages, or injury to her reputation, as a result of these remarks, nor do they constitute defamation *per se*. As to the third remark, it imputes unchastity to Padilla, and could constitute defamation *per se*. However, Fuller is not a defendant to this action. Carrier cannot be held liable for the racist views of an employee when they are clearly made outside the course and scope of Fuller's employment.

Therefore, even viewing the evidence in the light most favorable to the plaintiff, there are no genuine issues of material fact for a jury on this claim, and summary judgment should be granted.

### (F) Worker's Compensation Retaliation.

■ Finally, the plaintiff impliedly makes a claim for worker's compensation retaliation.[89] That section provides, in relevant part:

A person may not discharge or in any other manner discriminate against an employee because the employee has:

(1) filed a workers' compensation claim in good faith;

(2) hired a lawyer to represent the employee in a claim . . .

The purpose of the law is to prohibit employers from discharging an employee merely because she filed a workers' compensation claim. It is also designed to protect the exercise of a statutory right.[90]

The Court finds that this claim should be summarily dismissed, as it has already

held that Carrier did not discriminate against Padilla. She did not suffer an adverse employment action, and therefore cannot show that Carrier retaliated against her. Further, the plaintiff testified in her deposition that Carrier retaliated against her for being on a lifting restriction. This is not protected by the statute cited.

### CONCLUSION

After a thorough review of the pleadings, the briefs of the parties, and the excerpts from the plaintiff's deposition submitted as summary judgment evidence, the Court holds that summary judgment should be granted and this case should be dismissed with prejudice. Each of the plaintiff's claims of, *inter alia*, racial discrimination, hostile work environment, retaliation, and defamation against the defendant company, are either factually or legally deficient. Even when viewing all of the evidence in the light most favorable to the plaintiff, the Court finds that there is no genuine issue as to any material fact and the defendant, Carrier Air Conditioning, is entitled to judgment as a matter of law as to all of the plaintiff's claims.

It is therefore

**ORDERED** that *Defendant Carrier Corporation's Motion for Summary Judgment and Supporting Brief* (Docket No. 29) is hereby and in all things **GRANTED**. It is further

**ORDERED** that this action be **DISMISSED WITH PREJUDICE** as to all claims. It is further

**ORDERED** that all other further relief requested not herein expressly granted is hereby **DENIED**.

---

87. *Id.* at p. 214.

88. *Id.* at p. 213.

89. *Complaint* at ¶ 1.

90. *See Mid–South Bottling Co. v. Cigainero,* 799 S.W.2d 385 (1990), (Tex.App.—Texarkana 1990, *writ denied*).