James **EHRHARDT**, Plaintiff,

v.

**ELECTRICAL & INSTRUMENTATION UNLIMITED OF LOUISIANA**, Defendant.

No. 1:00-CV-831.

United States District Court,
E.D. Texas,
Beaumont Division.

July 24, 2002.

Mary Ferguson Bradford, Reaud,Morgan & Quinn, Beaumont, TX, for plaintiff.

G. Mark Jodon, Tara B. Hittelman, Littler Mendelson, Houston, TX, for defendant.

## MEMORANDUM OPINION

COBB, District Judge.

This is an employment dispute case, wherein defendant employer has brought a Motion for Summary Judgment. Upon review, this court is of the opinion that defendant's Motion for Summary Judgment should be GRANTED.

## I. FACTUAL AND PROCEDURAL SYNOPSIS

Defendant Electrical & Instrumentation Unlimited of Louisiana ("EIU") employed James Ehrhardt ("Ehrhardt") in January of 2000 as a general foreman for the defendant's project at the Goodyear plant in Beaumont, Texas. During the hiring process, Ehrhardt completed and signed an employment application. The application stated "Electricians, techs, fitters, and Management must give at least 2 years experience (attach separate sheet if necessary)." There was space to list three previous employers on the primary form. Ehrhardt completed the form, listing his time spent with three previous employers, which totaled well over two years. How-

ever, Ehrhardt did not list his most recent three employers, which would have totaled under two years experience.

Nine days after Ehrhardt's employment began, Misty Broussard ("Broussard"), an EIU employee returned to work after a leave of absence. Broussard informed David Reichard ("Reichard"), the project manager for EIU, that she had filed a sexual harassment claim against Ehrhardt while they were both employed at a previous job for Biskamp Electric within the last two years. Ehrhardt had not included Biskamp Electric on his employment application, and after confirming that Ehrhardt had worked for Biskamp, Reichard informed Ehrhardt they were terminating him for "[f]ailure to divulge working for Biskamp Electric within the last two years on his application." Reichard Deposition, p. 65. That same day at a general foreman's meeting, Reichard informed those at the meeting that Ehrhardt had been fired for being in violation of company policy.

Ehrhardt brought suit in state court, and EIU removed based on diversity jurisdiction. Ehrhardt has four surviving claims for which EIU seeks summary judgment. The claims are for breach of contract, defamation, fraud, and intentional infliction of emotional distress.

## II. ANALYSIS

### Summary Judgment Standard

A court should grant summary judgment when "there is no genuine issue as to any material fact and [ ] the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A fact is material if it might affect the outcome of a case under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine issue exists when, in the context of the entire record, a reason-able fact-finder could return a verdict for the non-movant. *Lujan v. National Wildlife Federation*, 497 U.S. 871, 885–86, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). The court must view the evidence introduced and all factual inferences from the evidence in the light most favorable to the party opposing summary judgment. *Eastman Kodak v. Image Technical Services*, 504 U.S. 451, 478, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992); *Lemelle v. Universal Mfg. Corp.*, 18 F.3d 1268, 1272 (5th Cir. 1994). However, this favorable presumption for the non-movant exists only when the non-movant presents an actual controversy of fact. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994).

### Contract Claim

■■■ The general rule in Texas is, absent a specific agreement to the contrary, employment may be terminated by the employer or the employee at will, for good cause, bad cause, or no cause at all. *Montgomery County Hosp. Dist. v. Brown*, 965 S.W.2d 501, 502 (Tex.1998); *Federal Express Corp. v. Dutschmann*, 846 S.W.2d 282, 283 (Tex.1993) (per curiam); *Schroeder v. Texas Iron Works*, 813 S.W.2d 483, 489 (Tex.1991); *Winters v. Houston Chronicle Pub. Co.*, 795 S.W.2d 723, 723 (Tex.1990); *Sabine Pilot Serv., Inc. v. Hauck*, 687 S.W.2d 733, 734–35 (Tex.1985). "To rebut the presumption of employment at will, an employment contract must directly limit in a 'meaningful and special way' the employer's right to terminate the employee without cause." *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 478 (5th Cir.2000) (quoting *Rios v. Texas Commerce Bancshares, Inc.*, 930 S.W.2d 809, 815 (Tex.App.—Corpus Christi 1996, writ denied) (quoting *Massey v. Houston Baptist Univ.*, 902 S.W.2d 81, 83 (Tex.App.—Houston [1st Dist.] 1995, writ denied))).

■ Ehrhardt has produced no evidence of an actual written contract which would limit EIU's right to terminate the employee without cause. However, Ehrhardt does argue that there was an oral contract for at least six months employment based upon his understanding of how long the project was to last. A promise which would form a contract if accepted, "is a manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made." Restatement (Second) of Contracts § 2(1) (1981). For an oral contract to exist, "the employer must unequivocally indicate a definite intent to be bound not to terminate the employee except under clearly specified circumstances. General comments that an employee will not be discharged as long as his work is satisfactory do not in themselves manifest such an intent. Neither do statements that an employee will be discharged only for 'good reason' or 'good cause' when there is no agreement on what those terms encompass. Without such agreement the employee cannot reasonably expect to limit the employer's right to terminate him. An employee who has no formal agreement with his employer cannot construct one out of indefinite comments, encouragements, or assurances." *Montgomery* 965 S.W.2d at 502. There has been no evidence produced that any representations were made by EIU which would indicate a definite intent to be bound not to terminate Ehrhardt.

The final contract-related argument Ehrhardt makes, is that EIU modified its right to discharge him at will by using certain language in its employment manual. Ehrhardt claims that because a stated purpose of the manual is to make the employees feel "comfortable", it demonstrates an effort to create job security. Further, Ehrhardt claims that because the manual only addresses employees being "discharged with cause", his firing would have to be for cause. Ehrhardt maintains that he did not lie on his application and there was therefore no cause to fire him. Whether Ehrhardt did or did not lie, and regardless of whether there was cause or no cause, it does not affect the present analysis. Not only do the provisions contained within the manual fall short of expressing the necessary definite intent to be bound, the fact it is a manual instead of a contract is also influential. *Id.*

■ "Although courts usually find that general statements about working conditions, disciplinary procedures, or termination rights are not sufficient to change the at-will employment relationship, a handbook may modify the at-will relationship if it specifically and expressly curtails the employer's right to terminate the employee." *Figueroa v. West,* 902 S.W.2d 701, 704 (Tex.App.—El Paso 1995, no writ); *McAlister v. Medina Elec. Coop., Inc.,* 830 S.W.2d 659, 664 (Tex.App.—San Antonio 1992, writ denied). For a manual to limit the employer's right to terminate an employee, it must restrict the at will relationship in a meaningful and special way and contain a specific contractual term altering the at will status. *Figueroa v. West,* 902 S.W.2d at 704. In this case, the employee manual fails to alter, or even address the at will relationship in any meaningful way. Hence, this court finds there was no employment contract between the parties, and EIU therefore did not breach a contract when it discharged Ehrhardt. Accordingly, summary judgment should be granted to EIU on Ehrhardt's breach of contract.

### Defamation Claim

Ehrhardt was working in Nevada when he contacted Reichard, the project manager, about a potential job. Ehrhardt claims that Reichard hired him over the tele-

phone, and told Ehrhardt to report to the employment office in Beaumont to fill out the necessary paper work. On January 26, 2000, Ehrhardt filled out his employment application in the presence of two other applicants and Kenneth Villejoin ("Villejoin"), an EIU employee who administered the applications. Ehrhardt claims that when he got to the portion of the application that asked for two years experience, he asked Villejoin how he should proceed. Ehrhardt says he told Villejoin that he had worked more than three jobs in the last two years, but that with one of those jobs, Brown & Root, he had more than ten years experience. Ehrhardt testified at deposition that he asked Villejoin if he needed to include a second sheet for his employment history:

Q: And what conversation was that?

A: I asked him did I need to go ahead and put out another sheet, do the application. I told him I had wrote on the second line there that I had worked with Brown & Root for ten years, showing that I have had years of experience in the trade, was that sufficient; and he said yes.

Q: Did you advise him that you were not providing two years of experience?

A: I've got—I mean it's ten years written on line two, showing more than ten years' experience. It's not showing the last jobs for the last two years. I mean, it's showing ten years just with one company right there.

. . . .

Q: Prior to filling out this application, did you have any other discussions with Mr. Villejoin?

A: I discussed with him about, like I said before, did I need to fill out an extra sheet or was that sufficient. And I did speak with him about the dates and told him that I did not recall the exact dates. He said just try to get as close as possible, which I mean in construction, that's normal.

Ehrhardt Dep. at 20, 25–26.

Additionally, Ehrhardt's testimony is supported by the affidavit of Tim McCafferty, one of the other applicants present on the 26th of January.

In support of his defamation claim, Ehrhardt also points to several additional facts. Ehrhardt claims that superintendent Mike Martinez, Ehrhardt's direct supervisor on the job, told Ehrhardt that he was fired over Misty Broussard's complaint and not because of anything else. The EIU project manager, Reichard, remembers Ehrhardt telling him that he had been instructed to complete the application in the manner he had, but that he never inquired of Villejoin to see if Ehrhardt's statement was true. Reichard also remembers telling Ehrhardt regarding his firing that his hands were tied, which Ehrhardt claims was in reference to the complaint from Broussard. After Reichard had fired Ehrhardt and escorted him off the premises, Reichard called a meeting where he claims he said Ehrhardt was fired for being in violation of company policy. It is not clear who was present at the meeting, but at a minimum the general foremen under Mike Martinez were there, Ehrhardt's direct co-workers. Finally, one of those co-workers, a general foreman named Mark Salter, and superintendent Mike Martinez subsequently told EIU employee Tim McCafferty that Ehrhardt had been fired for lying on his job application, but that the real reason was "EIU was already fighting a harassment lawsuit and they could not afford another lawsuit." Tim McCafferty Aff. at 3.

EIU objects to the evidentiary admissibility of several of the above facts, based upon hearsay and upon the limited liability of employers for their employees' statements. Ehrhardt primarily bases his def-

amation claim against EIU upon the statement made by Reichard, as project manager, at the foremen meeting. EIU argues that statement is privileged in the employment context, or alternatively that the statement was true. Ehrhardt claims that because Reichard did not try to restrict the publication of his statement to individuals with a corresponding interest, the qualified privilege was lost. Additionally, Ehrhardt claims the privilege was lost because of the reckless disregard for the truth by Reichard, which evidences malice.

## A. defamation per se

■ There are two types of oral defamatory statements, or slander. *Padilla v. Carrier Air Conditioning,* 67 F.Supp.2d 650, 663–64 (E.D.Tex.1999); *Bayoud v. Sigler,* 555 S.W.2d 913 (Tex.Civ. App.—Beaumont 1977, *writ dism'd*). There are those statements which are per se actionable without any allegations of special damages; and those statements which are actionable only on allegations and proof of special damages. *Id.* Even though language may tend to expose one to ridicule, hatred, or contempt, it is not per se actionable unless it "imputes to another the commission of a crime, has an injurious effect on one's office or business, or unless it falsely or maliciously imputes unchastity to a female." *Padilla,* 67 F.Supp.2d at 663; *Buck v. Savage,* 323 S.W.2d 363 (Tex.Civ.App.—Houston [1st Dist.] 1959, *writ. ref'd n.r.e.*). Additionally, to be defamatory, the statement must refer to an ascertainable person and it must be false, truth is an affirmative defense. *Padilla,* 67 F.Supp.2d at 663; *Randall's Food Markets, Inc. v. Johnson,* 891 S.W.2d 640, 646 (1995); *Town of South Padre Island v. Jacobs,* 736 S.W.2d 134, 140 (Tex.App.—Corpus Christi 1986, *writ denied*).

■ Ehrhardt argues that Reichard's statements were per se defamatory because they had an injurious effect on his business. Ehrhardt alleges that statements concerning his honesty are particularly harmful because of the value attached to honesty in the construction business. EIU claims that Ehrhardt cannot establish the statements were defamatory per se "because Plaintiff makes no showing that Reichard's words had an injurious effect on Plaintiff's business, profession or occupation." Defendant's Reply to Plaintiff's Opposition to Summary Judgment at 6. The court disagrees with defendant's argument because the definition of defamation per se is defamation that does not require proof of special damages.

■ The defendant next asserts an affirmative defense of truth, that Ehrhardt actually lied on his application in an attempt to conceal his past employment history with Biskamp because of the sexual harassment complaint which was filed by Misty Broussard.[1] *See Padilla,* 67 F.Supp.2d at 663. Ehrhardt argues that estoppel should apply to prevent such an argument because of the language of the application and the fact that Villejoin told Ehrhardt he did not have to fill out an extra page of references. Without addressing the equitable argument for estoppel, this court finds that there is a genuine issue as to whether Ehrhardt incorrectly filled out the application. The application asked for two years of experience, which Ehrhardt provided. The application did not specify that the applicant was required

1. The court finds it interesting that the only page which was apparently miscopied in defendant's exhibits, was the page of the job application asking for previous work experience. Indeed, the relevant instruction at the top of the page asking for two years of experience was missing. While an accurate copy was included at the end of the exhibit, perhaps it should have simply replaced the miscopied page within the exhibit.

**658**

to list all employers during the previous two years. However, whether this issue is material can better be explored subsequently.

 The defendant's objection to the evidence based upon hearsay and employer liability have some merit. The general rule on the admissibility of evidence on a motion for summary judgment is, the evidence is subject to the same rules that govern the admissibility of evidence at trial. *Lavespere v. Niagara Machine & Tool Works, Inc.*, 910 F.2d 167, 175–76 (5th Cir.1990), *abrogated on other grounds by Little v. Liquid Air Corporation*, 37 F.3d 1069, 1075 n. 14 (5th Cir.1994) (en banc). First, the Fifth Circuit has held that a district court properly excluded, on hearsay grounds, testimony from a witness that several of the defendant's employees had heard the plaintiff had been discharged for stealing. *Wells v. Shop Rite Foods, Inc.*, 474 F.2d 838, 839 (5th Cir.1973); *see also Westfall v. GTE North Inc.*, 956 F.Supp. 707, 713 (N.D.Tex.1996). Second, "a claim for defamation is sustainable against a corporate employer for the defamation by its employee only if such defamation is referable to the duty owing by the employee to the corporation, and was made while in the discharge of that duty." *Westfall*, 956 F.Supp. at 714, *citing Texam Oil Corp. v. Poynor*, 436 S.W.2d 129, 130 (Tex.1968); *Wagner v. Caprock Beef Packers Co.*, 540 S.W.2d 303, 304–05 (Tex.1976). Given these two standards, the court finds that EIU is not liable for the statements of Mike Martinez and Mark Salter to Tim McCafferty. However, the testimony of Tim McCafferty concerning what Mike Martinez and Mark Salter said would be admissible to show Reichard said something at the foremen meeting after he fired Ehrhardt. Additionally, the court notes that testimony regarding the general lunchroom gossip is not admissible because it both constitutes hearsay, and would not have been made in the discharge of duty.

 Based upon the admissible evidence now before the court, a genuine issue exists as to whether Ehrhardt incorrectly filled out the employment application. There is also some issue as to whether the statement Reichard made at the foremen meeting constitutes defamation per se. Because the meeting was called by Reichard, the project manager, in discharging his duty to explain to those who needed to know that Ehrhardt had been fired, EIU is liable for those statements. Before any further evaluation can be made, however, the affirmative defense of qualified privilege raised by EIU must be addressed.

## B. qualified privilege for employer's communications

 EIU claims that Reichard's statements were covered by qualified privilege. In Texas, communication on a subject matter is privileged if the person making the communication has an interest in that subject matter and the communication is made to persons with a corresponding interest or duty. *Danawala v. Houston Lighting & Power Co.*, 14 F.3d 251, 254 (5th Cir.1993). This privilege protects communications made by an employer in good faith regarding "an issue of some concern or mutual interest to the speaker and the listener." *Westfall*, 956 F.Supp. at 715. The privilege is not lost so long as the speaker believes in the truth of the statement, but is lost if the plaintiff can show the defendant acted with actual malice. *Danawala*, 14 F.3d at 254; *Westfall*, 956 F.Supp. at 715. If the underlying factual disputes are resolved, whether a qualified privilege exists is a question of law. *Id.* Unlike Texas state court, once the affirmative defense has been raised by the employer, it is the plaintiff's burden to produce clear and convincing evidence of actual malice to survive summary judgment. *Westfall*, 956 F.Supp. at 715.

The court is not persuaded by Ehrhardt's argument that the qualified privilege was lost because Reichard made the statement to people who did not have a corresponding interest. Present at the foremen meeting were individuals who worked directly with Ehrhardt and therefore had an interest in knowing that Ehrhardt had been terminated. Alternatively, Ehrhardt argues that Reichard made the statements with malice because he knew the statements to be false. Given that EIU is liable for the statements made by Reichard at the foremen's meeting, that there is a genuine issue as to whether those statements would constitute defamation per se if not protected by the privilege, and that the meeting was covered by the privilege, whether Reichard made the statements with malice becomes the critical question of Ehrhardt's defamation claim. If Ehrhardt shows by clear and convincing evidence that Reichard made the statements with malice, then the qualified privilege is lost.

 In the defamation context, actual malice is defined as a statement made with knowledge that it was false or with reckless disregard of whether it was false or not. *Randall's Food Markets, Inc. v. Johnson*, 891 S.W.2d 640, 646 (Tex.1995); *Hagler v. Proctor & Gamble Mfg. Co.*, 884 S.W.2d 771 (Tex.1994); *Bolling v. Baker*, 671 S.W.2d 559, 564 (Tex.App.—4th District 1984). To show reckless disregard requires proof that a statement was made with a high degree of awareness of its probable falsity. *Bolling*, 671 S.W.2d at 564. Additionally, there must be sufficient evidence to conclude the defendant entertained serious doubts as to the truth of the publication. *Id.*

 To avoid the application of privilege and survive summary judgment on the defamation claim, Ehrhardt must show that Reichard made the statement with actual malice. *Westfall*, 956 F.Supp. at

715. It is the opinion of this court, that Ehrhardt has failed to produce any evidence of actual malice on the part of Reichard. While a reasonable interpretation of the application form may not have required an applicant to list all of his employers for the previous two years, there has been no evidence produced which would indicate that Reichard did not think the application required such a listing. Additionally, there is evidence which suggests that Reichard decided to terminate Ehrhardt for the reason stated, because Ehrhardt was in violation of company policy. In his deposition, Reichard states the following.

Q. Okay. Now, when you—when you told Mr. Ehrhardt—Ehrhardt that your hands were tied as you were walking him to the gate, what did you mean by that?

A. That he had violated company policy; and it was fairly clear in our policies and procedures that if you violate company policy, you no longer have a job.

Q. But he told you that he had completed the job application and told Mr. Villejoin—he told you back in the meeting that he had—that Mr. Villejoin had instructed him on how to complete that application, didn't he?

A. And the instructions on the application are very clear.

Reichard Dep. at 66–67.

Ehrhardt has failed to meet his burden as a plaintiff by failing to produce any evidence to controvert these statements by Reichard. Therefore, this court cannot find that Reichard's statement at the foremen meeting was made with a high degree of awareness of its probable falsity, or that he entertained serious doubts as to its truth. *Bolling*, 671 S.W.2d at 564. In fact, the evidence suggests that Reichard believed the application required the listing of all the applicant's employers for the

**660**

previous two years. As such, this court finds that Reichard did not act with actual malice when he stated at the foremen meeting that Ehrhardt was fired for being in violation of company policy. Accordingly, EIU is covered by privilege for the statement made by Reichard at the meeting, and whether the application actually required an applicant to list all his employers for the previous two years is not material to this determination. For these reasons, this court is of the opinion that summary judgment should be granted on Ehrhardt's defamation claim.

### Fraud Claim

 Ehrhardt's fraud claim is based upon the representations made by Villejoin, the EIU employee who was present when Ehrhardt completed the employment application. To have an action of fraud, there must be "a material misrepresentation, which was false, and which was either known to be false when made or was asserted without knowledge of its truth, which was intended to be acted upon, which was relied upon, and which caused injury." *Formosa Plastics v. Presidio Engineers*, 960 S.W.2d 41, 47 (Tex. 1998), *citing Sears, Roebuck & Co. v. Meadows*, 877 S.W.2d 281, 282 (Tex.1994). There must be evidence that the defendant made representations with the intent to deceive, and that evidence must be relevant to the defendant's intent at the time the representation was made. *Formosa Plastics*, 960 S.W.2d at 48, *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 434 (Tex.1986). Ehrhardt claims that Villejoin, and therefore EIU, defrauded him when Villejoin allegedly affirmed that Ehrhardt did not need to continue a list of his employers on another sheet. Ehrhardt claims he relied upon that representation, and that it caused him injury when he was subsequently fired. The court disagrees that Ehrhardt has an actionable fraud claim.

There has been no evidence produced, either direct or circumstantial, that Villejoin had an intent to deceive Ehrhardt. At most, Villejoin affirmed that Ehrhardt's listing of three employers was sufficient and that there was no need to continue on another page. There is no evidence to suggest Villejoin could have known that Ehrhardt had worked for Biskamp Electric, or that it was a germane work experience. There is neither evidence that Villejoin made the representation with the intention of providing EIU grounds to subsequently fire Ehrhardt. Accordingly, this court is of the opinion that summary judgment should be granted to EIU on Ehrhardt's fraud claim.

### Intentional Infliction of Emotional Distress Claim

 Ehrhardt's complaint also raises a claim for intentional infliction of emotional distress. To recover under a claim of intentional infliction of emotional distress, Ehrhardt must show that (1) EIU acted intentionally or recklessly, (2) EIU's conduct was extreme and outrageous, (3) EIU's actions caused him emotional distress, and (4) the emotional distress was severe. *Danawala*, 14 F.3d at 256; *Southwestern Bell Mobile Systems, Inc. v. Franco*, 971 S.W.2d 52, 54 (Tex.1998); *Twyman v. Twyman*, 855 S.W.2d 619, 621–622 (Tex. 1993).

 EIU's conduct was not extreme and outrageous. For conduct to be outrageous, it must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Southwestern Bell Mobile, Inc.*, 971 S.W.2d at 54 (quoting *Twyman* 855 S.W.2d at 621 (quoting Restatement (Second) of Torts §§ 46, cmt. d)). "It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be

regarded as so extreme and outrageous as to permit recovery." *Danawala*, 14 F.3d at 256 (quoting *Wornick Co. v. Casas*, 856 S.W.2d 732, 734 (Tex.1993) (quoting Restatement (Second) of Torts §§ 46, cmt. h)). Even viewing the evidence before the court in the light most favorable to Ehrhardt, as a matter of law, EIU's conduct as an employer did not "exceed all possible bounds of decency" and was not "utterly intolerable in a civilized community." *Danawala*, 14 F.3d at 256; *see also Diamond Shamrock Refining and Mktg. Co. v. Mendez*, 844 S.W.2d 198, 201–02 (Tex.1992), cited in *Wornick*, 856 S.W.2d at 735; *Johnson v. Merrell Dow Pharmaceuticals, Inc.*, 965 F.2d 31, 33–34 (5th Cir.1992); *Wilson v. Monarch Paper Co.*, 939 F.2d 1138, 1142–45 (5th Cir.1991); *Dean v. Ford Motor Credit Co.*, 885 F.2d 300, 306–07 (5th Cir.1989). Therefore, Ehrhardt's intentional infliction of emotional distress claim should be dismissed.

## III. CONCLUSION

For the forgoing reasons, it is therefore the opinion of this court that defendant's Motion for Summary Judgment should be GRANTED. Accordingly, it is

ORDERED, that plaintiff Ehrhardt's contract, defamation, fraud, and intentional infliction of emotional distress claims are DISMISSED with prejudice.